STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOHN
MAGUIRE, DEFENDANT–RESPONDENT.

Argued March 4, 1980—Decided December 2, 1980.

*John DeCicco*, Assistant Attorney General, argued the cause for appellant (*John J. Degnan*, Attorney General of New Jersey, attorney; *John DeCicco, Carol M. Henderson* and *Debra Stone*, Deputy Attorneys General, on the brief).

*James K. Smith, Jr.*, Deputy Public Defender, argued the cause for respondent (*Stanley C. Van Ness*, Public Defender, attorney).

*Steven H. Gifis* argued the cause for *amicus curiae* New Jersey Association on Correction.

The opinion of the Court was delivered by

WILENTZ, C. J.

We are asked to decide whether the Legislature, in passing the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 *et seq.* (Code), intended that persons serving mandatory life sentences for first degree murder under former law should be automatically entitled to reconsideration and possible reduction of their sentences. The answer is no. Necessarily involved in this decision is whether the Legislature intended to reduce the maximum sentence for murder to a term of 30 years imprisonment and to authorize a life sentence only in cases where the State proves at a separate hearing that the murderer is either a persistent offender, a professional criminal, or a killer for hire (hereinafter "enhancement criteria"). Again the answer is no. We hold that no one now serving a mandatory life sentence for murder under former law is entitled to reconsideration of that sentence under the resentencing provisions of the Code, and that the crime of murder under the Code carries a potential life sentence without the necessity of proving an enhancement criterion.

The Code provides that a person serving a custodial sentence under pre–Code law may petition to have that sentence reconsidered if the offense has been eliminated by the Code or if the person was "sentenced to a maximum term which exceeds the maximum established by the code for such an offense." *N.J. S.A.* 2C:1–1(d)(2). Here involved is a petition for sentence review filed by respondent Maguire who was convicted in 1975 of first degree (felony) murder and received what was then the mandatory sentence of life imprisonment.[1] Respondent advances two arguments to support the claim that his life sentence exceeds the maximum sentence established by the Code for the crime of murder. He argues first that without further proof of at least one of the sentence enhancement criteria in *N.J.S.A.* 2C:44–3, the maximum sentence for murder is the 30–year term provided in *N.J.S.A.* 2C:11–3(b). Respondent also contends that even if the penalty of life imprisonment is now a discretionary

---

[1]*See* former *N.J.S.A.* 2A:113–2; –4.

sentencing option for murder under the Code, his mandatory life sentence should be deemed to "exceed" a discretionary maximum sentence of life imprisonment.

Pursuant to our order of October 18, 1979, respondent's petition was heard by the special resentencing panel which is composed of three judges of the Superior Court.[2] By a divided vote, the resentencing panel determined that respondent was eligible for a sentence reconsideration hearing under *N.J.S.A.* 2C:1–1(d)(2). Both the majority and the dissent rejected the claim that persons convicted of murder cannot receive an extended term of life imprisonment under the Code without separate proof of the enhancement criteria in *N.J.S.A.* 2C:44–3. The majority focused, however, on the Legislature's abandonment of the mandatory life sentence and emphasized that the imposition of a life sentence for murder now requires a structured exercise of judicial discretion. With those considerations in mind, the majority concluded that for the limited purpose of establishing eligibility for sentence review, the maximum sentence for murder under the Code should be construed to mean the 30–year maximum term set out in the murder provision itself, *N.J.S.A.* 2C:11–3(b), rather than the maximum extended term of life imprisonment under *N.J.S.A.* 2C:43–7(a)(1). The dissenting judge reasoned that in the context of the resentencing section the word "maximum" was intended to mean greatest or longest duration and concluded that the former mandatory life sentence did not exceed the maximum extended term of life imprisonment under the Code, notwithstanding the discretionary nature of the new maximum.

On December 19, 1979, the three–judge panel granted a stay of its decision pending the State's motion for leave to appeal. Because of the large number of defendants having a stake in the

---

[2]*See* 104 *N.J.L.J.* 369 (1979). The panel was established to further uniformity both in the determination of eligibility for sentence review under *N.J.S.A.* 2C:1–1(d)(2) and, where resentencing was appropriate, in the fashioning of new sentences under the Code.

outcome of this litigation [3] and the public importance of the issues involved, we granted direct certification and permitted the New Jersey Association on Correction ("NJAC") to participate as *amicus curiae*.

I.

In order the delineate the nature and proper scope of our inquiry, we note at the outset what is not involved in this case. No claim is made here that the former offense of first degree murder has been eliminated by the Code so as to entitle respondent to resentencing under *N.J.S.A.* 2C:1–1(d)(2); nor do we think such a claim is tenable.[4] Moreover, neither respondent nor NJAC claims that the State is constitutionally required to extend the benefits of a subsequently enacted sentencing scheme to all persons serving valid sentences imposed under former law.[5] Rather, we must determine whether persons serving life sentences for murder under former law are eligible for resentencing under *N.J.S.A.* 2C:1–1(d)(2) either because the

---

[3]We are informed that there are several hundred persons serving mandatory life sentences in our State prison system.

[4]While the Code abandons the former distinction between first and second degree murder, the degrees of murder under former law did not constitute separate and distinct crimes, but were grades of the same offense. *State v. Brown,* 22 *N.J.* 405, 412–14 (1956); *see also* II The New Jersey Penal Code: Commentary, Final Report of the New Jersey Criminal Law Revision Commission 152–53 (1971) (hereinafter "Final Comm'n Report"). *Cf. State v. Guido,* 40 *N.J.* 191, 210 & n. 4 (1963) (division of homicides into categories of murder and manslaughter constitutes a necessarily imprecise attempt to achieve proportionality between the magnitude of the wrong and the authorized punishment).

Moreover, the Code's broad definition of murder is designed to include not only conduct formerly classified as first degree murder, our present concern, but also much of what was formerly termed second degree murder. *Compare N.J.S.A.* 2C:11–3(a) with *N.J.S.A.* 2A:113–1, –2 & –4 and *State v. Gardner,* 51 *N.J.* 444 (1968).

[5]*See generally Warden v. Marrero,* 417 *U.S.* 653, 94 *S.Ct.* 2532, 41 *L.Ed.2d* 383 (1974); *United States ex rel. Hayden v. Zelker,* 506 *F.2d* 1228, (2d Cir. 1974) (holding that discrimination with respect to sentencing between persons committing similar offenses before and after effective date of New York 1967 Penal Code is not unconstitutional).

Code reduces the maximum punishment for the crime of murder to a 30–year term of imprisonment or because a mandatory life sentence exceeds a discretionary life sentence. In resolving these questions of statutory construction, we are mindful that our task is to effectuate the legislative intent in light of the language used and the objects sought to be achieved.[6]

---

[6]The argument that, since criminal laws must be strictly construed so as to favor defendants, any ambiguity must be resolved in favor of Maguire, misses the point in two respects. First the strict construction rule is not, as far as we know, applicable to statutory terms ameliorating prior sentences. Rather it applies to statutes with prospective effect rendering behavior criminal and is designed to narrowly confine the scope of the conduct covered, or the penalty applicable to such conduct, so as to avoid fundamental unfairness which might result when those penalized could arguably be said to have misunderstood positive law, or, more realistically, so as to avoid the unfairness of arbitrary enforcement. No such considerations apply to the provisions before us. No one ever relied on them. Second, the Code itself has its own principles of construction which do not mention any rule of "strict construction" but rather, provide that where "the language [of the Code] is susceptible of differing constructions it shall be interpreted to further the general purposes" stated in section 2C:1–2 and the special purposes of the particular provision involved. We do not believe that section 2C:1–2(b) was intended to cover resentencing at all. It is clearly intended to be of guidance when questions arise concerning sentencing (see section 2C:1–2(b) setting forth "the general purposes of the provisions governing the sentencing of the offenders") but, by implication, not concerning resentencing. Defendant's suggestion that the sentencing purposes, namely to "differentiate among offenders with a view to just individualization in their treatment" and another "to safeguard offenders against excessive, disproportionate or arbitrary punishment" require resentencing here, overlooks the obvious fact that the Legislature rejected universal application of the resentencing technique. It is only when the maximum sentence of the particular prisoner exceeds the maximum under the Code that resentencing is called for. Only then will "individualization" of treatment and safeguarding against "disproportionate . . . punishment" be accomplished. Since a very substantial proportion of those now in prison will not qualify for resentencing, and therefore will not obtain the advantages of individualization and reduction of disproportionate sentences contemplated by the Code, it cannot be concluded that those purposes should be used as a test for determining whether or not resentencing is available. Furthermore, if the purposes of section 2C:1–2(b) were applicable in this case, for determining the proper construction of the resentencing provisions, a determination of their effect would have to include the purposes set forth in *N.J.S.A.* 2C:1–2(b)(2) & (3):

(2) To promote the correction and rehabilitation of offenders;

## A.

The sentence reconsideration provision involved in this case first appeared in the original draft of Senate No. 738 (1978), the bill which eventually became the Code. The proposed section entitled *every person* serving a custodial sentence under prior law to be resentenced in accordance with the Code. The provision envisioned a comprehensive attempt to minimize sentence disparity between persons convicted under former law and persons convicted of the same offense after the effective date of the Code. However, this comprehensive scheme was not enacted. Instead the Legislature passed a compromise measure which limited eligibility to two classes of prisoners and provided that the decision to impose a new sentence would be discretionary rather than mandatory. *See* Senate Bill No. 738 (1978) (as amended) at 1–2.

As finally enacted, the provision reads as follows:

> Any person who is under sentence of imprisonment on the effective date of the code for an offense committed prior to the effective date which has been eliminated by the code or who has been sentenced to a maximum term of imprisonment for an offense committed prior to the effective date which exceeds the maximum established by the code for such an offense and who, on said effective date, has not had his sentence suspended or been paroled or discharged, may move to have his sentence reviewed by the sentencing court and the court may impose a new sentence, for good cause shown as though the person had been convicted under the code, except that no period of detention or supervision shall be increased as a result of such resentencing. [*N.J.S.A.* 2C:1–1(d)(2)].

While an applicant's existing maximum sentence is a matter of record, the proper reach of the clause—"which exceeds the maximum established by the code for such an offense"—is clouded by the lack of definition of the crucial term "maximum."

The Code classifies all offenses into four grades of crimes and two levels of disorderly persons offenses. *N.J.S.A.* 2C:1–4; 2C:43–1. For crimes of the fourth degree, disorderly persons offenses and petty disorderly persons offenses, the maximum

---

(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection.

custodial sentences are 18 months, 6 months and 30 days, respectively. For crimes of the first through third degrees, however, the Code provides generally for two types of custodial sentences. *N.J.S.A.* 2C:43–6 establishes separate sentence ranges[7] for each grade of crime which are designated "ordinary terms" of imprisonment. In addition to these ordinary term sentence ranges, *N.J.S.A.* 2C:43–7 establishes "extended term" ranges for "the cases designated in section 2C:44–3 or 2C:11–3." The latter Code section concerns the crime of murder. *N.J.S.A.* 2C:44–3 in turn provides that upon application of the prosecuting attorney, the sentencing court may impose an extended term of imprisonment for crimes of the first, second or third degree if the court finds one or more of the grounds specified in that section.

For the purpose of determining eligibility for sentence review, the question is whether an applicant's present maximum is to be measured against the maximum ordinary term or the maximum extended term. For the reasons stated below, we conclude that in every case (with the possible exception noted in note 10 *infra*) where the imposition of an extended term is subject to the requirements of section 2C:44–3, eligibility for resentencing must be determined by comparing the applicant's present maximum with the maximum ordinary term for the correlative crime under the Code. If the Code maximum is less, the applicant is entitled to a resentencing hearing under section 2C:1–1(d)(2).

Under *N.J.S.A.* 2C:44–3, a defendant convicted of a crime of the first, second or third degree may be sentenced to an extended term only if the sentencing court expressly finds that the defendant is a persistent offender, that he is a professional criminal or that he committed the crime for pay, as those terms

---

[7]*Unlike prior law which generally required the trial court to impose an indeterminate sentence (expressed as a range between a minimum and maximum term) the Code requires that, within the ranges provided, the trial court select a single term, which becomes the determinate sentence, i. e., 15 years imprisonment.*

are defined in the statute.[8] The central focus of these enhancement criteria is on offender–related characteristics. By contrast, the pertinent eligibility requirement in 2C:1–1(d)(2) focuses on the maximum sentence established by the Code "for such an offense." As in all cases of statutory construction, our task is to interpret the words of the statute in light of the purposes the Legislature sought to further. *State v. Madden*, 61 *N.J.* 377, 389 (1972); *Red Bank Regional Ed. Ass'n v. Red Bank Reg. High School Bd. of Ed.*, 78 *N.J.* 122, 131–32 (1978). While the Legislature substantially restricted the scope of its initial plan to afford all prisoners the opportunity to be resentenced pursuant to the Code, the statute plainly evidences an intent to relieve some of the frustration felt by prisoners whose sentences under former law exceed the maximum sentence that may be imposed under the Code for a like offense. Thus, if the focus of section 2C:1–1(d)(2) on the offense itself is given practical effect, an applicant's existing maximum must be compared with the maxi-

---

[8]*N.J.S.A.* 2C:44–3. Criteria for Sentence of Extended Term of Imprisonment

The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.

a. The defendant is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.

b. The defendant is a professional criminal. A professional criminal is a person who committed a crime as part of a continuing criminal activity in concert with two or more persons, and the circumstances of the crime show he has knowingly devoted himself to criminal activity as a major source of livelihood.

c. The defendant committed the crime as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value the amount of which was unrelated to the proceeds of the crime or he procured the commission of the offense by payment or promise of payment of anything of pecuniary value.

mum permitted under the Code for an offender who, like the applicant, has not been shown to meet the extended term requirements.[9]

Consideration of two other factors lends further support to our construction of the statutory language. First, the findings required for an extended term under section 2C:44–3 must be made at a post–conviction hearing in which the State has the burden of proof and the defendant has the right to present evidence and cross–examine witnesses. *N.J.S.A.* 2C:44–6(e). However, in cases where a defendant was sentenced under former law for an offense now classified as a crime of the first, second or third degree, none of the required findings has been made, nor has the defendant had an opportunity to contest the existence of the specified grounds.[10] In the absence of an opportunity to contest the facts necessary to trigger the extended terms for the grades of crime subject to 2C:44–3, the maximum sentence under the Code must be read to refer only to the maximum ordinary term provided under 2C:43–6 or, as in the case of kidnapping, by the statute defining the crime, *N.J.S.A.* 2C:13–1(c) (kidnapping is a crime of the first degree but upon

---

[9]One of the obvious consequences of the Legislature's compromise is the disparity of treatment that may result between an applicant who received a 19 year maximum and an applicant who received a 21 year maximum for a crime that now carries a 20 year maximum ordinary sentence. Under 2C:1–1(d)(2) only the latter is eligible for sentence reconsideration. While this result may be difficult to justify in the abstract, it is clear that any scheme that does not resentence all prisoners will necessarily fall short of removing all disparity.

[10]We recognize that this analysis may lead to the opposite result in cases where the applicant was sentenced under the former Habitual Criminal Act, *N.J.S.A.* 2A:85–9, –12, based on two or more prior convictions. Defendants who were proceeded against under those provisions were accorded the full range of procedural safeguards including the right to a jury trial of the issue. *N.J.S.A.* 2A:85–13; *State v. Washington*, 47 *N.J.* 244, 250 (1966). At least in cases where the facts underlying an applicant's habitual offender sentence clearly demonstrate that the applicant satisfies the Code's definition of a persistent offender, *N.J.S.A.* 2C:44–3(a), –4, the relevant Code maximum for resentencing eligibility purposes may be the maximum extended term applicable to the defendant's most recent offense. However, that issue is not before us in this case.

conviction a defendant may be sentenced "to an ordinary term of imprisonment between 15 and 30 years" without regard to the presumptive sentence).[11] Second, if the extended term maximums were used to determine eligibility for resentencing, the resentencing provision would lose all force and effect for the maximum extended terms under the Code almost invariably exceed the maximums prescribed by former law.

## B.

We now consider whether the foregoing analysis leads to the same result in the case of an applicant serving a life sentence for murder. Respondent acknowledges that the Code provides a maximum extended term of life imprisonment for murder under *N.J.S.A.* 2C:43–7(a)(1) but points to the 30–year maximum sentence for murder authorized by *N.J.S.A.* 2C:11–3(b). He takes the position that because the Code classified murder as a crime of the first degree and because extended terms for crimes of the first degree are governed expressly and without exception by the terms of *N.J.S.A.* 2C:44–3, it follows that a person convicted of murder under the Code cannot be sentenced to life imprisonment unless at least one of the enhancement criteria in *N.J.S.A.* 2C:44–3 is established at a post–conviction hearing conducted in accordance with the procedural safeguards in *N.J.S.A.* 2C:44–6(e). In the absence of such findings, the argument continues, murder is subject to the 30–year maximum provided in *N.J.S.A.* 2C:11–3(b) and, for the reasons advanced in the preceding section of this opinion, respondent claims to be eligible for resentencing because his life

---

[11]While the extended term ranges are to be disregarded in determining eligibility for a resentencing hearing where the congruent Code offense is subject to 2C:44–3, the existence of the enhancement criteria may nevertheless be proven by the State both to persuade the resentencing panel on the issue of "good cause" and, if such panel deems "good cause" has been shown on the issue of the appropriate resentencing. *Cf. State v. Johnson*, 176 *N.J.Super.* 1, 8 (App.Div.1980) (implies that the enhancement criteria in section 2C:44–3 should be considered along with the aggravating and mitigating factors in section 2C:44–1 in determining whether "good cause" exists).

sentence exceeds the purported ordinary term maximum of 30 years.

The central premise of respondent's argument is that under the Code life imprisonment is not an available punishment for the crime of murder as such, but may only be imposed on a defendant who murders for pay or who is a persistent offender or a professional criminal. As noted above, the resentencing panel unanimously rejected this position.

We find no support for this proposition in either the statutory language or the available legislative history. Moreover, we are convinced that if the Legislature intended virtually to eliminate this longstanding and widely—accepted punishment for murder it would have done so unequivocally and directly.[12] Finally, strong

---

[12]Prior opinions of this Court have traced the historical developments in New Jersey concerning the substantive definition of murder and its punishment. *See generally, State v. Sullivan*, 43 *N.J.* 209, 241–47 (1964); *State v. Forcella*, 52 *N.J.* 263 (1968); *State v. Madden*, 61 *N.J.* 377 (1972). When degrees of murder were first introduced by *L.*1839, pp. 147–48, the death penalty was the mandatory punishment for first degree murder. The sentence of life imprisonment became the mandatory alternative to the death penalty in cases of first degree murder under *L.*1916, *c.* 270. Following this Court's decision in *State v. Funicello*, 60 *N.J.* 60 (1972), that the death penalty provided for in New Jersey's homicide statutes was unconstitutional, life imprisonment remained as the mandatory punishment for first degree murder.

The history of legislative activity recounted in those decisions is strong evidence that the crime of murder and its appropriate punishment have always been matters of deep concern for every member of society. *See, e.g., Sullivan, supra*, 43 *N.J.* at 244–45; *Forcella, supra*, 52 *N.J.* at 301–02 (Jacobs and Hall, JJ., dissenting); *Madden, supra*, 61 *N.J.* at 388–89. Moreover, every state in this country makes life imprisonment an available punishment for first degree murder and our research has not revealed any state law which requires proof that the murderer is either a persistent offender, a professional criminal or a criminal for hire as a prerequisite for the imposition of a life sentence for this crime. Legislative intent may be inferred from the Legislature's clear awareness of public expectations. There is no subject matter of the criminal law in which the public has a more intense interest than that of murder and its punishment nor one in which the public is more aware of the fact that life imprisonment is the prescribed punishment. We think it certain that the Legislature was equally aware of these matters and that it would be unlikely, under these circumstances, that it would eliminate

evidence that the Legislature did not intend the Code to lessen the penalty for murder can be found in the fact that at the same time that the Code was being enacted, the Legislature passed a bill reinstating the death penalty. Although this bill, Senate Bill No. 880 (1978), was ultimately vetoed by the Governor, we believe that the legislative mood which resulted in its passage was inconsistent with the alleged legislative intention to remove life imprisonment as even a discretionary option for murder.[13]

As noted above, *see* note 4, *supra*, the Code definition of murder encompasses not only what was formerly classified as first degree murder but also much of what was formerly second degree murder. This broad category of criminal homicides is then made subject to three related penalty provisions. Two sentencing options are contained in the murder statute together with a cross–reference to the third option under the section providing for extended term ranges. *N.J.S.A.* 2C:11–3(b) provides:

b. Murder is a crime of the first degree but a person convicted of murder may, notwithstanding the [presumptive sentence provision] be sentenced by the court (1) to a term of 30 years of which the person must serve 15 years before being eligible for parole, or (2) as in a crime of the first degree except that the maximum term for such a crime of the first degree shall be 30 years. Nothing contained in this subsection shall prohibit the court from imposing an extended term pursuant to 2C:43–7 for the crime of murder.

*N.J.S.A.* 2C:43–7, in turn, provides:

a. In the cases designated in section 2C:44–3 or 2C:11–3 [murder], a person who has been convicted of a crime may be sentenced to an extended term of imprisonment, as follows:

---

that long–standing sanction without giving the public clear notice and an opportunity to be heard on the issue. There was neither.

[13]The Code and the proposed death penalty bill were both acted upon by the Legislature during the summer of 1978. The Code was enacted on August 10, 1978. The death penalty bill passed the Senate on June 1, 1978, and the Assembly on June 27, 1978. The Governor vetoed the latter on October 5, 1978.

The significance of the temporal proximity of these legislative actions was also noted by Judge Coleman in his dissent in *State v. Hubbard,* 176 *N.J.Super.* 174 (Resent.Panel 1980). Judge Coleman maintained that "it would be incongruous for a Legislature favoring the reinstatement of the death penalty to enact a new Penal Code that reduces the prison sentence for murder." *Id.* at 182.

(1) In the case of a crime sentenced under 2C:11-3 for a specific term of years which shall be between 30 years and life imprisonment;

.     .     .     .     .     .     .     .

b. As part of a sentence for an extended term and notwithstanding the provisions of 2C:43-9, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a. during which the defendant shall not be eligible for parole or a term of 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment provided that no defendant shall be eligible for parole at a date earlier than otherwise provided by the law governing parole.

We are persuaded that these provisions fairly imply that a person convicted of murder may be sentenced to the maximum term of life imprisonment provided under 2C:43-7(a)(1) without the necessity for separate findings under 2C:44-3.

An examination of the relevant legislative history confirms this reading of the statute. The 1971 proposed Penal Code provided that a person convicted of felony murder or of a homicide purposely committed may be sentenced to death, to life imprisonment or as in a crime of the first degree. A person convicted of a homicide committed knowingly or recklessly could be sentenced to life imprisonment or as in a crime of the first degree. I *Final Comm'n Report, supra,* at 50. In 1978, however, there was a crucial departure from the Commission's recommendation that life imprisonment be retained as an available punishment for all types of murder. In Senate Bill No. 738 (1978), the bill that was ultimately enacted, the drafters eliminated the death penalty and prescribed the following sentences for murder in section 11-3(b):

b. Murder is a crime of the first degree but a person convicted of murder may be sentenced by the court to (1) a term of 30 years of which the person must serve 15 years before being eligible for parole or (2) as in a crime of the first degree except that the maximum term for such a crime of the first degree shall be 30 years.

In addition, the drafters authorized a maximum extended term of 50 years for murder:

In the cases designated in section 2C:44-3 and 2C:11-3, a person who has been convicted of a crime may be sentenced to an extended term of imprisonment, as follows:

(1) In the case of a crime sentenced under 2C:11-3b(1) for a specific term of years which shall be fixed by the court and shall be between 30 years and 50 years .... [Senate Bill No. 738 (1978), § 2C:43-7(a) (original draft)].

This original draft, eliminating both the death penalty and life imprisonment as punishments for murder, was amended extensively before final approval. The two sections quoted above appeared in *L.*1978, *c.* 95 with the following changed or additional language underscored:

> b. Murder is a crime of the first degree but a person convicted of murder may be sentenced by the court to (1) a term of 30 years of which the person must serve 15 years before being eligible for parole or (2) as in a crime of the first degree except that the maximum term for such a crime of the first degree shall be 30 years. Nothing contained in this subsection shall prohibit the court from imposing an extended term pursuant to 2C:43–7 for the crime of murder. [*N.J. S.A.* 2C:11–3(b)].
>
> *N.J.S.A.* 2C:43–7. *Sentence of Imprisonment for Crime; Extended Terms.* a. In the cases designated in sections 2C:44–3 and 2C:11–3, a person who has been convicted of a crime may be sentenced to an extended term of imprisonment, as follows:
>
> (1) In the case of a crime sentenced under 2C:11–3b(1) for a specific term of years which shall be fixed by the court and shall be between 30 years and life imprisonment;
>
> .    .    .    .    .    .    .    .
>
> b. As part of a sentence for an extended term, the court may fix a minimum term during which the defendant shall not be eligible for parole and which may be up to one–half of the term set pursuant to subsection a or a term of up to 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment.

A comparison of the original draft of Senate Bill No. 738 (1978) with the enacted version demonstrates that the proposed abolition of life imprisonment as an available punishment for murder was considered and rejected by the Legislature.

The final stage in the Code's legislative history was the enactment of certain amendments to the Code during the one–year interval between the original enactment of *L.*1978, *c.* 95 and September 1, 1979, the effective date of the Code. During that year the Assembly amended Senate Bill No. 3203 (1979), the bill which was introduced as the "Consensus Amendments" and eventually enacted into law, to require courts to sentence every person convicted of murder "to a term of between 30 years and life imprisonment of which the person must serve 25 years before being eligible for parole [but] [n]o person convicted of murder shall be eligible for an extended term pursuant to 2C:43–7." The Senate, however, rejected this amendment and

the Assembly acquiesced in its rejection. Instead, Senate Bill No. 3203 (1979) as finally enacted amended section 2C:11–3(b) so as to exempt murder penalties from the presumptive sentence requirement [14] and amended section 2C:43–7 as follows (deleted language in brackets; new language underscored):

2C:43–7.a.  In the cases designated in section 2C:44–3 [and] or 2C:11–3, a person who has been convicted of a crime may be sentenced to an extended term of imprisonment, as follows:

1.  In the case of a crime sentenced under [2C:11–3(b)(1)] 2C:11–3 for a specific term of years which shall be [fixed by the court and shall be] between 30 years and life imprisonment; . . . [L.1979, c. 178].

In light of the defeated Assembly proposal *requiring* a sentence of 30 years to life imprisonment, this amendment replacing "and" with "or" constitutes persuasive evidence that the Legislature intended to stress the disjunctive effect, thereby making it clear that while a 30 years to life term was not mandatory, it was available as a matter of sound discretion. *See George Hyman Const. Co. v. O.S.H.R.C.*, 582 *F.*2d 834 (4th Cir. 1978); *cf. I.U.E. & M.W. of A., Local No. 11400 v. Portee, Inc.*, 303 *Minn.* 341, 228 *N.W.*2d 239 (1975) (an amendment replacing "or" with "and" made clear that conjunctive effect should follow). Read in the disjunctive, section 2C:43–7(a) provides that persons convicted of murder without more as well as those persons convicted of other crimes who also meet the requirements of section 2C:44–3 may be sentenced to the applicable extended term.

This Court has recognized that:

[A] comparative analysis of the language of contemporaneous statutes may, because of contrasting language applicable to similar subject matter, be indicative of an intent or purpose on the part of the Legislature to provide different treatment. [*Malone v. Fender*, 80 *N.J.* 129, 136 (1979), citing *Smith v. Township of Hazlet*, 63 *N.J.* 523, 527 (1973)].

---

[14]The presumptive sentence rule provides that when a court determines that a custodial sentence is appropriate, it shall, except for murder or kidnapping, sentence the defendant to a term of years specified in the Code (at or near the mid–point of the ordinary term range) unless the preponderance of either the aggravating or mitigating circumstances weighs in favor of higher or lower terms within the ordinary term range.

Our conclusion that the imposition of a life sentence for murder is not subject to the requirements of section 2C:44–3 is reinforced by comparing the foregoing treatment of murder penalties with the sentencing provisions for the crime of kidnapping. Under former law kidnapping for ransom, like first degree murder, was subject to the death penalty unless the jury specifically recommended the mandatory alternative of life imprisonment. *N.J.S.A.* 2A:118–1. Similarly, the Code provides a special ordinary sentence range which is unaffected by the presumptive sentence rule:

*N.J.S.A.* 2C:13–1(c). *Grading of kidnapping.*

Kidnapping is a crime of the first degree and upon conviction therefor a person may, notwithstanding the provisions of 2C:44–1 f., be sentenced to an ordinary term of imprisonment between 15 and 30 years. If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree.

The operative differences are immediately apparent. This section, unlike section 2C:11–3(b), states that the 15–30 year range is an "ordinary term" and contains no cross–reference to the extended term provision (*N.J.S.A.* 2C:43–7). Moreover, section 2C:43–7 contains no disjunctive mention of the special kidnapping penalty. There can be no doubt, however, that a person convicted of kidnapping is subject to an extended term sentence under section 2C:43–7(a)(2) if the State establishes the existence of at least one of the grounds specified in section 2C:44–3. By the same token, it is clear that the Legislature intended to reduce the maximum sentence for the crime of kidnapping from life imprisonment to a term of 30 years. This analysis demonstrates that where the Legislature intended to eliminate life imprisonment as the penalty for a notorious crime and to provide in its place a special ordinary term, it did so directly. The contrasting language applicable to sentencing for murder demonstrates the Legislature's intent to provide different treatment for that crime by exempting it from 2C:44–3.

Respondent's attempt to read language in 2C:44–6(e) [15] as evidence that the enhancement criteria in 2C:44–3 apply to

---

[15] *N.J.S.A.* 2C:44–6(e) provides:

sentencing for murder is unconvincing. Read in context, this section provides that the ground necessary to support the imposition of an extended term must be established at a post–conviction hearing accompanied by the requisite due process safeguards. While the term "ground" obviously refers to the enhancement criteria in section 2C:44–3, nothing in this section purports to extend the reach of section 2C:44–3 so as to enlarge the class of cases subject to its requirements. Having already canvassed the overwhelming evidence that the Legislature purposely drafted section 2C:43–7(a) to exclude murder from the ambit of section 2C:44–3, we are unable to find in section 2C:44–6(e) an intention to nullify that decision.

We conclude that under the Code the crime of murder is subject to a discretionary extended term of life imprisonment without separate proof of the specific enhancement criteria in section 2C:44–3.

## C.

Respondent also contends that even if the extended sentence for murder is not subject to the requirements in section 2C:44–3, it is still characterized as an "extended term" rather than an ordinary sentence and therefore its availability as a discretionary sentencing option should not operate to preclude sentence review for persons who received a mandatory life sentence under former law. *Amicus* NJAC advances the closely related argument that a mandatory life sentence is inherently more severe than a discretionary life sentence and therefore urges that persons serving an automatically imposed life sentence should not be deprived of the opportunity to be sentenced in accordance with the structured discretion established by the Code.

---

e. The court shall not impose a sentence of imprisonment for an *extended term* unless *the ground therefor has been established* at a hearing after the conviction of the defendant and on written notice to him of the ground proposed. The defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue.

As noted above, the question whether a mandatory life sentence exceeds a discretionary maximum of life imprisonment for resentencing eligibility purposes divided the judges on the resentencing panel. In disregarding for eligibility purposes the Code's authorization of a life sentence for murder, the majority apparently reasoned that an expansive reading of section 2C:1–1(d)(2) would further the legislative intent to diminish disparity of treatment between persons sentenced under former law and persons sentenced under the discretionary standards provided in section 2C:44–1.

Respondent and *amicus* emphasize that the Legislature substantially changed its approach to punishment of persons convicted of murder in the new Code, abandoning the arbitrary sanction of a mandatory life sentence in favor of emphasis on individualization of sentences for all crimes. In light of this basic change, they argue that little purpose is served by denying respondent or other prisoners serving mandatory sentences eligibility for sentence reconsideration under section 2C:1–1(d)(2), indeed that such denial frustrates the Code's goals:

(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

. . . .

(6) To differentiate among offenders with a view to a just individualization in their treatment. [*N.J.S.A.* 2C:1–2(b)(4), (6)].

While this argument may have intuitive appeal, it is addressed to the wrong branch of government. Just as punishment for crimes is committed primarily to the Legislature, the Legislature's decision to limit the retroactive application of an ameliorative criminal sentencing scheme is subject to judicial invalidation only when the legislative judgment oversteps constitutional bounds. Section 2C:1–1(d)(2) conditions eligibility for sentence reconsideration on a comparison between maximum terms of imprisonment under former law and the Code, and, regardless of the consequences for respondent, the Legislature transgressed no constitutional limits.

While a primary goal of the Code generally and the resentencing section in particular is to reduce disparity in sentencing, our review of the Legislature's rejection of a compre-

hensive resentencing scheme and its enactment of section 2C:1–1(d)(2) as a compromise measure makes clear that the Legislature has narrowly limited the eligible class. It is a settled rule of statutory construction that if the language chosen by the Legislature is plain and the result is not contrary to obvious legislative intent, "the sole function of the court is to enforce it according to its terms." *Sheeran v. Nationwide Mutual Ins. Co., Inc.,* 80 *N.J.* 548, 556 (1979), *quoting Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917).

■ In the context of the statutory phrase "exceeds the maximum [sentence] established by the code for such an offense," we are convinced the term "maximum" means the highest sentence or the sentence of longest duration which may be imposed. In light of our holding that an extended term of life imprisonment is an available punishment in murder cases without separate proof of the enhancement criteria in section 2C:44–3, it follows that respondent's life sentence does not exceed the maximum established by the Code for the crime of murder. As Judge Conford states in a similar context, "[w]hen the legislative intent is as clearly manifested as it is here, the court is not at liberty to rule otherwise out of considerations of sympathy for the defendant or preference for the new as opposed to the former statutory penal policies in this area." *State v. Duswalt,* 153 *N.J.Super.* 399, 406 (App.Div.1977).

To premise eligibility under section 2C:1–1(d)(2) on the ground that a mandatory sentence "exceeds" a discretionary sentence of the same duration would amount to a conclusion that the Legislature intended to permit resentencing for persons who were convicted by a jury of first degree murder but to deny that opportunity to persons who were convicted on a plea of *non vult* to a murder indictment even though both were sentenced to life in prison. Under former *N.J.S.A.* 2A:113–3, a person convicted on a plea of *non vult* to the indictment could be sentenced to life imprisonment or to a maximum term of 30 years. Since a life sentence imposed under section 2A:113–3 was a discretionary sentence, persons sentenced thereunder would be ineligible for review under respondent's proposed reading of section 2C:1–

1(d)(2). We find no warrant in the language or history of the Code for a construction that leads to such an inequitable result.

While there is force to the argument that the remedial purpose of the Code's sentencing scheme supports an expansive interpretation of the phrase "exceeds the maximum established by the code for such an offense," it would make little sense for the Legislature to have drafted the section as it did if it had intended to confer eligibility for resentencing on every person whose sentence under former law had not been subject to the particular discretionary standards established by the Code. Put differently, if respondent is correct, it must be because the discretion afforded by the Code exceeds that under prior law—in the case of murder, no discretion whatsoever. Logically extended, the contention would lead to resentencing for all offenses where the discretion conferred by the Code exceeds that provided for under prior law. The Code does not so provide. In order to give meaning to this statute as written by the Legislature, we must conclude that a mandatory life sentence under former law does not exceed the maximum for murder established by the Code.

Finally, those who argue that the mandatory life sentence under former law is inherently "harsher" than the discretionary life imprisonment allowed under the Code are presumably suggesting that in reality those sentenced under prior law for murder will generally be sentenced to longer terms than those sentenced under the Code; that the purpose of the resentencing provisions of the Code, namely to reduce disparity, would indeed be well served by making them applicable to such situation. While their contentions concerning the relative length of *sentences* is undoubtedly correct, the fact is that the Legislature never purported to deal with a comparison of the average severity of sentences as between prior law and the Code, rather the Legislature's definition of resentencing eligibility was measured by the permissible maximum sentence under the Code, no matter how often or seldom such maximum was likely to be imposed. Second, the "reality" which is so strongly stressed by defendant and *amicus* would be a poor standard if severity of treatment is to be the test of right to resentencing (rather than

the express standard set forth in the Code for resentencing). The reality stressed by them is the duration of a *sentence*, but we suggest that the ultimate reality is the period of actual imprisonment. Under prior law the mandatory life sentence ordinarily resulted in imprisonment just short of 15 years; under the Code it may very well result in substantially greater imprisonment, in many cases as much as 25 years. The fact is that until sentencing patterns emerge under the Code, it will not be possible to say whether the mandatory life imprisonment under prior law is in truth a harsher penalty than that provided for under the Code. We note with interest, however, that while ordinary terms under the Code are frequently subject to lower custodial maxima than equivalent offenses under prior law, compare *N.J.S.A.* 2A:85–6, –7, with *N.J.S.A.* 2C:43–1(b), –6(a)(3)(4) (misdemeanors); *N.J.S.A.* 2A:113–1, –4 with *N.J.S.A.* 2C:11–3 (murder); *N.J.S.A.* 2A:118–1 with *N.J.S.A.* 2C:13–1 (kidnapping); and *N.J.S.A.* 2A:141–1 with *N.J.S.A.* 2C:15-1 (robbery), the reports of the Sentencing Research Project of the Administrative Office of the Courts for the Criminal Disposition Commission established under the Code (*N.J.S.A.* 2C:48–1 *et seq.*), reveal that Code sentences frequently require more time to be spent in custody because of presumptive terms, *N.J.S.A.* 2C:44–1(f), and use of parole ineligibility terms, *N.J.S.A.* 2C:43–6(b), –7(b). *See State v. Hubbard,* 176 *N.J.Super.* 174, 182–183 (Resent.Panel 1980) (Coleman, J.S.C., dissenting); Ongoing Report of Sentencings Under the Code of Criminal Justice, Administrative Office of the Courts (October 8, 1980).

## II.

Having concluded that murder is subject to a discretionary life sentence under section 2C:43–7, we write briefly to emphasize that while murder is not subject to the strictures of section 2C:44–3, the judicial discretion to impose a sentence for murder within the extended term range is in no sense unfettered but remains subject to the sentencing framework established by the Code.

Until the enactment of the Code, the Legislature had not expressly identified the legitimate aims of punishment or estab-

lished a consistent framework for guiding sentencing discretion. *State v. Ivan*, 33 *N.J.* 197, 200 (1960). Consequently those tasks, as well as the job of fashioning a proper sentence in particular cases, devolved upon the trial judge. *Id.* at 201.[16] Faced with this legislative inaction, we sought to corral the virtually unfettered sentencing discretion exercised by judges by identifying basic aims of criminal punishment, *Ivan, supra*, 33 *N.J.* at 200–202; by cataloging various aggravating and mitigating factors to be considered in fixing a sentence, *State v. Leggeadrini*, 75 *N.J.* 150, 156–59 (1977); *State v. Jones*, 66 *N.J.* 563, 568 (1975), and by requiring an express statement of reasons for the particular disposition, *R.* 3:21–4(e), to facilitate meaningful appellate review. *See Leggeadrini, supra*, 75 *N.J.* at 157; *see also State v. Tumminello*, 70 *N.J.* 187, 194–95 (1976). Despite these judicial efforts sentencing disparity continued to plague the administration of criminal justice.[17]

---

[16]The Final Commission Report contained this critique of the former laws:

> The present sentencing system, if it can be called a system, is defective in a number of respects. There is a senseless and indefensible variety of sentences prescribed for offenses. This leads to a total absence of sensible classification of the seriousness of different crimes. This is true both as to terms of imprisonment and fines.... A major reform of the proposed code is the institution of a consistent plan of grading individual offenses. Present penal law employs grading erratically. Some crude grading appears in the homicide and a few other provisions. The Code establishes a system of grading for virtually every offense. Legislative grading is important as a matter of fairness between offenders far apart in the spectrum of social danger and as a desirable legislative control of the discretion of sentencing judges. [I *Final Comm'n Report, supra*, at xiv].

[17]*See* Division of Correction & Parole, N.J.Dep't of Inst. & Agencies, Sentencing Disparity among Prison Commitments; By County, Judge, and by Case (1974), *cited in* Raymar, "Criminal Dispositions for New Jersey: Pretrial Intervention, the Model Penal Code, and Just Deserts," 8 *Seton Hall L.Rev.* 1, 22 n. 10 (1976); *see generally* Frankel, *supra*.

In response to the sentencing disparities identified in the Division of Corrections' Report, the Administrative Office of the Courts initiated a computer study designed to produce statewide sentencing guidelines. The first set of uniform guidelines was promulgated by the AOC in October 1978 and a supplemental set was issued in March 1979. These reports provide a sentencing matrix–similar to that established for parole decisions by the United States Parol Commission–which locates a recommended sentence based on relevant offender and offense characteristics.

In enacting the new Code, the Legislature has for the first time addressed directly the problem of sentence disparity. The Code not only identifies the permissible aims of punishment,[18] but also establishes a general framework to guide judicial discretion in imposing sentences. The Code explicitly provides that "[t]he discretionary powers conferred by the code shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes [governing the definition of offenses and the sentencing of offenders]." *N.J.S.A.* 2C:1-2(c). The statutory criteria which bear directly on the decision whether to sentence a defendant convicted of murder under section 2C:11-3(b) or under section 2C:43-7 are the aggravating and mitigating circumstances provided in section 2C:44-1. While a sentencing court is directed to make explicit factual findings on the record regarding the application of these sentencing factors, they do not appear to have been intended as an exclusive or exhaustive list of relevant sentencing criteria.

In fashioning an appropriate sentence for murder in a particular case, the trial judge must determine the relative weight to be attached to the aggravating and mitigating factors revealed during the trial and in the presentence report. This task is made more difficult by language in section 2C:11-3(b) suggest-

---

[18]*N.J.S.A.* 2C:1-2(b) states that the "general purposes of the provisions governing the sentencing of offenders are:

(1) To prevent and condemn the commission of offenses;

(2) To promote the correction and rehabilitation of offenders;

(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;

(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;

(6) To differentiate among offenders with a view to a just individualization in their treatment; and

(7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders."

ing that the presumptive sentence rule in *N.J.S.A.* 2C:44–1(f) is inapplicable to sentencing for murder. Sections 2C:11–3(b) and 2C:43–7(a)(1) provide that a person convicted of murder may, notwithstanding the presumptive sentence rule, be sentenced either to a term of 30 years of which the person must serve 15 years before being eligible for parole, to a term of between 10 and 30 years, or to an extended term of between 30 years and life imprisonment. The Legislature seemingly has invited a situation in which one judge may begin at a 30–year term and decrease or increase the sentence as mitigating and aggravating factors appear, while another judge may begin the same process at a 20–year term. However, we do not believe that the Legislature intended to precipitate such an extreme breakdown of the sentencing scheme. Rather, since a uniform starting point is essential to meaningful application of aggravating and mitigating sentencing factors for a given type of crime, it may well be that murder and kidnapping were excepted from section 2C:44–1(f) because the 15–year presumptive sentence for other first degree crimes does not constitute the mid–point of the special sentence ranges established for these two crimes.

Thus, in fashioning a sentence for murder under the Code, a trial court must fix a specific term of years between 10 years imprisonment and a life sentence, and may, where circumstances warrant it, invoke the parole ineligibility provisions of sections 2C:11–3(b) and 2C:43–7(b). In reaching that decision, the court must carefully evaluate the aggravating and mitigating factors in section 2C:44–1. Even without the benefit of a statutory presumptive sentence, we believe that the imposition of a life sentence for murder should be reserved for those cases where the aggravating circumstances substantially outweigh the mitigating circumstances.[19] Apart from these basic observations, we decline the invitation to settle in the abstract the precise bounds of judicial discretion in sentencing for murder under the

---

[19]We note in passing that the aggravating circumstances set out in section 2C:44–1(a)(5), (6) & (7) are analogous to the specific enhancement criteria in section 2C:44–3.

Code.[20] Having identified the nature of the problems posed by the absence of a statutory presumptive sentence for murder, we note that its solution is in the first instance a matter for further legislative action.

For all of the foregoing reasons, the judgment of the resentencing panel is reversed.

SCHREIBER, J., joins in all but Part II of opinion.

*For reversal* –Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER and HANDLER–5.

*For affirmance* –none.

---

[20]We note that the judicial discretion permitted under the Code may lead to quite substantial disparities in sentencing. *See State v. Hubbard*, 176 *N.J.Super.* 174, 188 (Resent. Panel 1980) (Coleman, J. S. C., dissenting).