**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5052-16T1

MICHAEL DENHAM,

 Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

 Respondent-Respondent.

_____

Submitted November 15, 2018 – Decided February 1, 2019

Before Judges Vernoia and Moynihan.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PFRS No. 3-88666.

Caruso Smith Picini, PC, attorneys for appellant (Timothy R. Smith, of counsel; Steven J. Kaflowitz, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeff S. Ignatowitz, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Michael Denham, a former police officer, appeals from a final decision of the Board of Trustees of the Police and Firemen's Retirement System (PFRS),[1] adopting the administrative law judge's initial decision on cross-motions for summary disposition affirming the Board's refusal to file and process petitioner's application for accidental disability retirement benefits (ADRB). We determine petitioner was ineligible to apply for ADRB because he separated from service not for reasons related to his disability, but because he was terminated for misconduct prior to submitting his application.

The ALJ determined the following facts pertinent to the summary decision motions were undisputed. Petitioner applied for ADRB on October 9, 2014 based on job-related injuries he suffered during the arrest of a suspect in April 2009. About three months prior, petitioner had been served with a final notice of disciplinary action removing him from service effective March 23, 2014 based on his conduct during and after an arrest he made in November 2013.[2] An ALJ affirmed petitioner's removal in May 2015.

---

[1] N.J.S.A. 43:16A-1 to -68.

[2] The preliminary notice of disciplinary action which petitioner included in his appendix was served on April 2, 2014.

Relying on N.J.S.A. 43:16A-7,[3] the ALJ determined the "prohibition of granting an ADRB" was due to petitioner's removal from service which "made it impossible for [him] to show that he is physically disabled from the performance of his job. The reason he is incapable of showing he is physically disabled from the performance of his job is because he is removed from service," a circumstance the ALJ "equate[d] . . . with . . . willful negligence," i.e., a "[d]eliberate act or deliberate failure to act," N.J.A.C. 17:4-6.5. The ALJ also concluded that under N.J.S.A. 43:16A-8, which requires a beneficiary receiving ADRB to return for duty if the beneficiary's disability "vanished or has materially diminished" to the extent the "beneficiary is able to perform either

---

[3] N.J.S.A. 43:16A-7(1) provides in pertinent part:

> Upon the written application by a member in service . . . any member may be retired on an accidental disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.

his [or her] former duty or any other available duty in the department which his [or her] employer is willing to assign to him [or her]," petitioner could not return to duty because he was terminated as a result of his intentional misconduct.

We recognize, generally, final decisions of state administrative agencies are entitled to considerable deference, and an agency's application of statutes and regulations "within its implementing and enforcing responsibility is ordinarily entitled to our deference." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). In other words, "[w]e give substantial deference to the interpretation of the agency charged with enforcing an act. The agency's interpretation will prevail provided it is not plainly unreasonable." Merin v. Maglaki, 126 N.J. 430, 436-37 (1992). "Absent arbitrary, unreasonable or capricious action, the agency's determination must be affirmed." Wnuck, 337 N.J. Super. at 56 (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)). "An appellate tribunal is, however, in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Secs. Co. v. Bureau of Secs., Div. of Consumer Affairs, 64 N.J. 85, 93 (1973).

4

Petitioner urges us to adopt another ALJ's holding that neither N.J.S.A. 43:16A-7 nor any other statute or regulation sanctions the denial of consideration of an ADRB application when an employee is terminated for disciplinary reasons. We decline to adopt that analysis. Instead, we follow In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386 (App. Div.), certif. denied, ___ N.J. ___, ___ (2018). Although we there reviewed regulations re-adopted by the Department of Treasury, Division of Pensions and Benefits in 2016 "address[ing] disability retirement eligibility and related applications," id. at 396-97, including N.J.A.C. 17:1-6.4 (a rule pertaining to separation from service and disability retirement eligibility),[4] we perpended the statutory framework pertaining to ADRB in place at the time petitioner submitted his application.

In N.J.A.C., we recognized that the retirement systems' enabling statutes, including those applicable to the PFRS, "make clear that, although a person

---

[4] The ALJ ruled that "N.J.A.C. 17:1-6.4 should not be applied to prevent the application for disability benefits." This specific issue was not raised or briefed on appeal by the parties. We therefore will not consider it. 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009) (noting claims that have not been briefed are deemed abandoned on appeal); Linek v. Korbeil, 333 N.J. Super. 464, 471 (App. Div. 2000) (declining to consider a plaintiff's argument because of her "failure to file a notice of appeal . . . from [the relevant] portion of the trial court's order").

A-5052-16T1

eligible for benefits is entitled to a liberal interpretation of a pension statute, 'eligibility [itself] is not to be liberally permitted.'" 454 N.J. Super. at 397, 399 (quoting Smith v. Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007)). As we did in N.J.A.C., we acknowledge the plain language of the statute does not require that an applicant for ADRB leave service due to a disability, id. at 399, and for no other reason, including termination. But, as we there observed, "[i]t is obvious to us that there is no such explicit text in the enabling statutes because it is common sense that disability retirees leave their jobs due to a purported disability. After all, the employee seeks disability retirement benefits." Ibid.

"The primary task for the [c]ourt is to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Merin, 126 N.J. at 435 (quoting State v. Maguire, 84 N.J. 508, 514 (1980)). "The [c]ourt fulfills its role by construing a statute in a fashion consistent with the statutory context in which it appears." Ibid. "The words chosen by the legislature are deemed to have been chosen for a reason." Ibid. Our Supreme Court "recognized that furtherance of legislative purpose is key to the construction of any statute." Id. at 436.

A-5052-16T1

Heeding that prescription, we again recognize the references to an ADRB applicant's current employer or employment in numerous eligibility statutes evidence that the Legislature contemplated such an applicant must be employed at the time an application is submitted to be eligible for benefits. N.J.A.C., 454 N.J. Super. at 399-400. N.J.S.A. 43:16A-7(1) dictates – in the present tense – that "a member in service" must prove mental or physical incapacity "for the performance of his [or her] usual duty and of any other available duty in the department which his [or her] employer is willing to assign to him [or her]." See N.J.A.C., 454 N.J. Super. at 400. N.J.S.A. 43:16A-1(6) also uses the present tense to define an employer as a governmental entity "which pays the particular policeman." Ibid.

We also agree with the ALJ's prescient determination that, under N.J.S.A. 43:16A-8, a retiree who proves that a disability is rehabilitated is entitled to return to active service in the same status and position held at the time of retirement, if that duty is available. See N.J.A.C., 454 N.J. Super. at 400-01 (citing Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 33-35 (2009) and In re Allen, 262 N.J. Super. 438, 444 (App. Div. 1993)). In light of that rehabilitation statute, which is among a group of similar

statutes that have been in existence for decades, <u>N.J.A.C.</u>, 454 N.J. Super. at 400-02, we reasoned:

> Returning to active service presumes that, at the time the beneficiary left public service, he or she actually had a duty. . . . And so, a beneficiary who previously left public service for some reason other than a disability – like termination for cause – would have no employment or work duty from which to return.
>
> The rehabilitation statutes presume that, <u>unlike</u> other retirees attempting to return to state service, the <u>only</u> obstacle to a disability retiree's reemployment is the disability itself. Once the disability abates, the disability retirement beneficiary may be entitled to reinstatement. <u>See</u> <u>Allen</u>, 262 N.J. Super. at 444 (interpreting the rehabilitation statutes, and observing that, "[t]he Legislature clearly recognized that individuals returning from a disability retirement are in a unique situation, <u>plainly different</u> from all other employees returning to active service . . . [and t]heir separation from employment is <u>unlike</u> the voluntary separation of other civil servants" (emphasis added)). The statutory language expressly conditions reinstatement for disability retirees upon disability rehabilitation. It logically follows then that disability retirees must have left public service because of the disability in the first instance; unlike someone who has been terminated for cause.
>
> [<u>Id.</u> at 401-02 (last three alternations in original).]

Petitioner is not in a position to return to work if he proves rehabilitation; he has no work to return to because he was separated from service for proven misconduct.

A-5052-16T1

We also draw the same conclusion as to petitioner's position that we did as to the New Jersey Education Association's interpretation of the enabling legislation in N.J.A.C.:  it conflicts with the statutory supervisory authority public officials have over public employees.  Id. at 402-03.

> For example, the civil service statutes declare that, "[i]t is the public policy of this State to provide public officials with appropriate appointment, supervisory and other personnel authority to execute properly their constitutional and statutory responsibilities."  N.J.S.A. 11A:1-2(b).  And "[i]t is the public policy of this State to encourage and reward meritorious performance by employees in the public service and to retain and separate employees on the basis of the adequacy of their performance."  N.J.S.A. 11A:1-2(c).  Public bodies obviously have the power to remove employees for cause.  E.g., . . . N.J.S.A. 40:69A-37(b) (stating that local councils have authority to remove any municipal officer for cause).
>
> [Ibid.]

Petitioner's argued theory contravenes the legislative intention to vest public agencies with decision-making authority over personnel.  See id. at 403.

Petitioner was terminated from his position for cause due to his misconduct, not a disability.  His application for ADRB, made after his termination, was an attempt to collect benefits for which he is ineligible. Common sense informs our decision that there was no reason for the Board to futilely accept and process the application made after his termination.

In light of our holding we need not address petitioner's argument in his second point: the ALJ "wrongly gave as an alternative ground for his ruling that [petitioner] did not timely submit reports from two medical doctors along with his disability application." We determine petitioner's remaining arguments are without sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5052-16T1