176 N.J. Super. 174 (1980)
422 A.2d 471
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT HUBBARD, DEFENDANT.
Superior Court of New Jersey, Resentencing Panel.
Decided October 1, 1980.
*176 Before Judges COLEMAN, MARZULLI and YANOFF.
Carol Henderson, Deputy Attorney General, for the State (John J. Degnan, Attorney General, Attorney).
Eldridge Hawkins for defendant.
PER CURIAM.
On December 18, 1979 a motion for stay of further proceedings in the above was granted. In September 1980 the Resentencing Panel called for argument on whether the stay should be vacated. This opinion is the result of that argument.
In addition to the problems posed by State v. Maguire, 176 N.J. Super. 164 (Resentencing Panel 1979), now pending in the New Jersey Supreme Court, the issue in this case is disparity. In skeleton outline: Hubbard, Rainey, Anderson and Arrington participated in a homicide. The killing took place during the course of a robbery. The precise roles played by each of the participants is not clear, but it seems conceded that Hubbard did not pull the trigger. Anderson and Arrington pleaded non vult to a murder charge, and each received a term of eight to ten years. Rainey went to trial and was convicted of second-degree murder and sentenced to 20 to 25 years. Rainey, apparently, was the "trigger man." Hubbard was tried separately, found guilty of first-degree murder and automatically sentenced to life imprisonment. Hubbard had sold Rainey the murder weapon, but, it seems, not for the purpose of committing the murder.
We need not repeat the reasons set forth in State v. Maguire, supra, as to why Hubbard is entitled to be considered for resentencing under N.J.S.A. 2C:1-1 d(2). In this case there are additional reasons. The obvious purpose of N.J.S.A. 2C:1-1 d(2) is to diminish disparity. One can ascribe no statutory intent to it other than that persons convicted under the Title 2A scheme should not be required to serve a greater sentence than persons of equal culpability convicted under the Code. The two Supreme Court orders, dated October 18, 1979 and November 29, *177 1979 (104 N.J.L.J. 369, 489 (1979), under which the Resentencing Panel was created, have diminution of disparity as their objective, not only between persons convicted under Title 2A and under Title 2C, but in the administration of N.J.S.A. 2C:1-1 d(2). A major reason for the orders is prevention of disparity in resentencing which may arise from judgments of resentence imposed by judges throughout the State, by creating a single tribunal whose rulings are more likely to be internally consistent.
While the Supreme Court has said that the mere fact that one defendant receives a different sentence than that of a codefendant does not entitle him to relief (State v. Hicks, 54 N.J. 390, 391 (1969)), in actuality it views disparity in sentencing with disfavor. In Hicks itself sentence was reduced to that of his coperpetrator, Gardiner. There is an obvious sense of unfairness in having disparate punishment for equally culpable perpetrators. See State v. Whitehead, 159 N.J. Super. 433 (Law Div. 1978), aff'd 80 N.J. 343 (1979). In this case, because Hubbard was tried separately and because of the nondiscretionary application of N.J.S.A. 2A:113-4, he received a life sentence. Whether he was equally or more culpable than the others who received more lenient sentences, or whether he deserved the sentence he received, is not known; this must await the good cause hearing. Had he pleaded non vult, as did Anderson and Arrington, he might well be walking the streets now, as they are. There is an inherent constitutional problem in exposing a person who pleads not guilty and goes to trial to a greater term than that of one who pleads guilty. This was explored in State v. Forcella, 52 N.J. 263 (1968), rev'd sub nom. State v. Funicello, 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859 (1971), and United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). Cf. Corbitt v. New Jersey, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978).
We need not at this time determine that the principles applied in Funicello and Jackson, supra, are relevant in a case *178 such as this, where a defendant, ostensibly similarly situated to other defendants, probably received more stringent treatment because he exercised his constitutional right to put the State to its proof. It is sufficient to conclude that they are pertinent enough to constitute an additional reason why Hubbard should be afforded a resentencing hearing.
In consequence, the stay ordered by this court barring further proceeding in this cause is revoked and the case will be scheduled for hearing as to "good cause."
COLEMAN, J.S.C. (dissenting).
The question addressed by this panel in this case is whether the maximum sentence received by defendant convicted of first degree murder under N.J.S.A. 2A:113-1, a mandatory term of life imprisonment, exceeds the maximum sentence permitted for such an offense under N.J.S.A. 2C:11-3. That is, has defendant met the threshold requirement of N.J.S.A. 2C:1-1 d(2) in order to qualify for a review of his sentence before this panel.
Defendant's motion to be resentenced pursuant to N.J.S.A. 2C:1-1 d(2) was bifurcated. First we must decide the threshold question. If that question is favorably decided for defendant, then the question of good cause to change the sentence will be decided at a later time.
The motion presently before the panel is directed to the threshold question. Such a motion should focus exclusively upon the offense itself and the maximum sentence that can be imposed for such an offense. If the threshold question is resolved favorably for defendant, then at a "good cause" hearing the focus will shift to the offender and the offense. Thus, a discussion of disparity in the sentences received by each of the three codefendants involved with defendant Hubbard has no place in this aspect of the motion seeking to determine the threshold question. More will be said later on the alleged disparity. At the hearings on the threshold, both the defense attorney and the deputy attorney general acknowledged that *179 they were not prepared to argue "good cause." Thus, no meaningful discussion occurred on the "good cause."
The perimeter of our authority for resentencing is prescribed in N.J.S.A. 2C:1-1 d(2). Unless a defendant can prove to the satisfaction of the panel that he or she meets the threshold requirement and that there is good cause, the sentence cannot be changed. Accordingly, I dissent because defendant has failed to meet the jurisdictional threshold requirement. The burden of proving the jurisdictional requirements rests with defendant to satisfy the panel (N.J.S.A. 2C:1-13 d) that he has been sentenced to a term of imprisonment that exceeds the maximum sentence for murder under N.J.S.A. 2C:11-3.

I. Legislative Intent
Principally, the legislative intent of the framers of the new Code of Criminal Justice must be ascertained and followed regarding statutory interpretation. This legislative intent will answer the questions of whether an extended term for murder under N.J.S.A. 2C:43-7 a is to be considered as part of the maximum sentence permitted within the meaning of N.J.S.A. 2C:1-1 d(2), and whether the life term sentencing option provided by Title 2C is less than the mandatory life term previously provided by Title 2A.
The recognition of the unique nature of murder as exemplified by the Legislature's treatment of the crime both in the new Code and elsewhere compels me ineluctably to the conclusion that the Legislature did not intend that the maximum sentence under Title 2C be considered a reduction from that of Title 2A.
A court must follow certain well-established principles in ascertaining the legislative intent where that intent is not specifically stated. A court cannot rewrite or ignore clear and unambiguous language in order to effectuate a conjectured but unexpressed intent. Hogg v. Employees Retirem. Sys., Essex Cty., 56 N.J. Super. 130, 134 (App.Div. 1959). Statutes should be interpreted according to the most natural and obvious import of the language without resorting to subtle or forced construction *180 for the purpose of limiting or extending their operation. Skowysz v. Ventnor, 110 N.J. Super. 340, 349 (Law Div. 1969), aff'd 56 N.J. 168 (1970). Statutory language is to be given its ordinary meaning in the absence of a specific indication to the contrary. Grogan v. DeSapio, 11 N.J. 308, 323 (1953).
I, therefore, maintain that the word "maximum" in N.J.S.A. 2C:1-1 d(2) means the greatest or highest legal sentence which a court could impose for the particular crime. Black's Law Dictionary (4 ed.) defines "maximum" as "The greatest quantity or highest degree attainable or attained, or the greatest or highest allowed by law or authority." Nowhere in the Code does the Legislature indicate that "maximum" is to be given any other interpretation. As will be illustrated, an extended term is available in murder cases without regard to the criterion of N.J.S.A. 2C:44-3 which applies to all other first, second and third degree crimes. The uniqueness of murder which has been recognized by the Legislature sets the maximum term for murder under Title 2C at life imprisonment.
The intent of the Legislature in framing the new Code can be elucidated through a study of the evolution of the precise wording of N.J.S.A. 2C:43-7. The Proposed New Jersey Penal Code § 2C:43-7 a (Final Report of the New Jersey Law Revision Commission, Oct. 1971) provided:
In the cases designated in § 2C:44-3, a person who has been convicted of a crime may be sentenced to an extended term of imprisonment as follows:
(1) In the case of a crime of the first degree, for a term which shall be fixed by the court between 20 years and life imprisonment.
Thus, in 1971 the Legislature pondered setting up strict criteria by which to designate the crimes, other than murder, which deserved extended sentences. As will be seen later, murder was excluded from the extended term because the proposed murder statute itself contained the punishment options.
When the Code of Criminal Justice was passed by the Legislature and signed into law as chapter 95, Laws of 1978, § 2C:43-7 of the Proposed New Jersey Penal Code (1971) was revised, and this section showed the Legislature's intention to add N.J.S.A. *181 2C:11-3 (murder) to N.J.S.A. 2C:44-3[1] as a distinct and separate criterion for imposing an extended term. N.J.S.A. 2C:43-7 a provided:
In the cases designated in 2C:44-3 and 2C:11-3, a person who has been convicted of a crime may be sentenced to an extended term of imprisonment as follows:
Before the Code of Criminal Justice became effective on September 1, 1979 the Legislature was apparently persuaded that the word "and" in N.J.S.A. 2C:43-7 a, which read: "In the cases designated in 2C:44-3 and 2C:11-3 [emphasis added] should be changed to `or'." The concern was that the word "and" would allow questions to be raised as to whether one of the criteria established in N.J.S.A. 2C:44-3 must be satisfied before the imposition of a sentence between 30 years and life for murder. Thus a part of the so-called consensus amendment, which became chapter 178, Laws of 1979, changed the "and" to "or" in N.J.S.A. 2C:43-7 a.
The changing of the "and" to "or" in the aforesaid section shows the conscious intention of the Legislature to delineate two separate categories of crime for imposition of the extended term. The first is murder, in which a life term is a direct sentencing option. The second category consists of all other crimes which must fit into one of the three enumerated criteria which will justify an extended term according to N.J.S.A. 2C:44-3.
Supporting this view is the language of N.J.S.A. 2C:11-3 b, which provides:
Nothing in this subsection shall prohibit the court from imposing an extended term pursuant to 2C:43-7 for the crime of murder.
This language would not have been included if the Legislature had intended that the only way to receive a life sentence for murder was to fit it into one of the N.J.S.A. 2C:44-3 pigeonholes.
*182 Another vehicle by which legislative intent may be ascertained is the legislation promulgated contemporaneously with the new Code. Since 1975 the Legislature has attempted several times to pass a bill which would reinstate the death penalty. Senate Bill 880 was successfully passed on October 15, 1978, but was vetoed by the Governor. While Senate Bill 880 never became law, the psychological predilections of the Legislature were clear. It would be incongruous for a Legislature favoring the reinstatement of the death penalty to enact a new penal code that reduces the prison sentence for murder. In fact, the Proposed New Jersey Penal Code (1971), released by the New Jersey Criminal Law Revision Commission, provided in § 2C:11-3 b for the death penalty as follows:
Murder is a crime of the first degree but a person convicted of murder may be sentenced to death, to life imprisonment or as in a crime of the first degree, as provided in Section 2C:11-7, if the conviction is under Subsection a(1) or (4) of this Section. If the conviction is under any other provision of Subsection a of this Section, the defendant shall be sentenced by the Court to life imprisonment or as in a crime of the first degree. [I Proposed New Jersey Penal Code (1971); emphasis supplied.]
The sentencing options for murder are focused in N.J.S.A. 2C:11-3 b and N.J.S.A. 2C:43-7 a(1). These statutes provide for three options:
(1) Flat 30 years with mandatory 15 years parole ineligibility.[2]
(2) Up to 30 years as a first degree crime with discretionary parole ineligibility up to 15 years.[3]
(3) A specific term of years between 30 years and life with discretionary parole ineligibility up to 25 years.[4]
A consideration of these sentencing options seems most persuasive that the Legislature did not intend to reduce the sentence for murder. On the contrary, any one of the above options may lead to a harsher sentence, except for parole time, *183 than a mandatory life sentence under N.J.S.A. 2A:113-4, since most defendants were eligible for parole in 14 years 10 months as a first offender. While N.J.S.A. 2C:44-1 c(2) mandates that the court consider the defendant's parole date when determining the sentence, there is no guideline in Title 2C for fixing parole ineligibility for crimes except for the mandatory parole ineligibility in N.J.S.A. 2C:11-3 b (murder) for the first sentencing option and in N.J.S.A. 2C:14-6 for certain sex crimes under the Parole Act of 1979, chapter 441, Laws of 1979, the mandatory life sentence under N.J.S.A. 2A:113-4 now carries 11 years 7 months as earliest parole eligibility for first or second offenders and 16 years 6 months as the latest unless the sentencing judge or prosecutor objects to the release for second offenders.[5]
Even though the 30 years to life sentencing option is contained under the section designated "extended term," N.J.S.A. 2C:43-7 a(1), it is something of a misnomer to call it an extended term for murder. No condition precedent is required except a conviction for murder and the proper application of the aggravating and mitigating factors of N.J.S.A. 2C:44-1 a and b which are considered on sentencing day. The presumptive sentence of N.J.S.A. 2C:44-1 f does not apply. See N.J.S.A. 2C:11-3 b. The Legislature having eliminated the criteria of N.J.S.A. 2C:44-3 from murder cases, a hearing under N.J.S.A. 2C:44-6 e has been rendered meaningless in murder cases. The purpose of N.J.S.A. 2C:44-6 e was to establish a hearing, satisfying procedural due process requirements, to determine if one of the criteria of an extended term, in a nonmurder case can be established. In a true extended term case one of the three criteria must be satisfied because imposition of an extended term. In murder cases 30 years to life is imposable as a sentencing option without reference to N.J.S.A. 2C:44-3. Since murder is the only crime exempt from the criteria of N.J.S.A. 2C:44-3 for imposing an "extended term," this is another indication *184 that the Legislature did not intend to lessen the maximum sentence for murder.
An illustration will prove helpful. The defendant John Jones has been convicted of a felony-murder for a homicide committed during a robbery of a grocery store. He had cruelly and without provocation shot and killed the grocer, the grocer's son and a female customer. John Jones has never been convicted of a crime previously, he is not a member of organized crime and he was not a hired mercenary. Rather, he is an independent murderer to whom none of the N.J.S.A. 2C:44-3 criteria apply. At sentencing, Title 2C allows the judge to consider all aggravating and mitigating circumstances of the crime and to impose a term of life imprisonment with minimal parole ineligibility up to 25 years as a direct sentencing option without reference to any N.J.S.A. 2C:44-3 criteria.

II. Disparity
I add some observations on sentencing disparity because the majority has made it the heart and soul of its decision. I must, therefore, respond. Defendant Hubbard and three other males were charged with felony-murder as aiders and abettors, based upon a homicide that occurred during the alleged commission of an armed robbery. Earlier in the day of the homicide, May 27, 1971, defendant transferred possession of the gun used in the homicide to his cofelon Rainey. The four males went to the home of the victim to buy drugs or to rob him, knowing Rainey was armed. After forcing their way into the victim's home, a scuffle ensued and the victim struck Arrington with a hammer. Whereupon Rainey shot and mortally wounded the victim. Arrington and Anderson pleaded non vult to murder with a recommendation of a maximum sentence of ten years to State Prison conditioned upon their testifying for the State in the trial of Rainey and Hubbard. The armed robbery counts were dismissed. Each received a sentence of eight to ten years to State Prison. They testified against Hubbard and possibly against Rainey. Since Rainey had given a statement to the police *185 inculpating himself and codefendant Hubbard, separate trials were ordered. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Rainey was convicted of second degree murder and sentenced to 20 to 25 years to State Prison. Hubbard was convicted of felony-murder and robbery while armed. He was sentenced on April 11, 1972 to a mandatory life term. See N.J.S.A. 2A:113-4 as modified by State v. Funicello, 60 N.J. 60, 67 (1972). The same judge sentenced both Rainey and Hubbard.
One of the most critical aspects of the criminal justice process is sentencing. To the convicted defendant the sentence is probably the most crucial. Thus, it is not my intention to minimize the significance of disparity. I wholeheartedly agree that an unjustifiable disparity in the sentence meted out to similar offenders for similar offenses is unjust and should be corrected. But it must be recognized that disparity is classified as justifiable and unjustifiable. An unjustifiable disparity is the result of the sentencing judge abusing his discretion or depriving a defendant of his constitutional rights. Clearly, this case does not involve the kind of invidious disparity discussed by Justice Marshall in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). A justifiable disparity may result from the sentencing judge giving proper consideration to the law, the facts and circumstances of the offense, the characteristics of the defendant, defendant's social background, cooperativeness with law enforcement and all other proper guidelines for sentencing.
The sentence imposed upon defendant Hubbard does not constitute an unjustifiable disparity. Our courts have long since recognized that a sentencing judge may properly consider a plea of guilty as well as a defendant's cooperation with law enforcement. In State v. DeStasio, 49 N.J. 247, 260 (1967), the court said: "It would be grossly unfair to the many if all had to be sentenced without regard to their acknowledgement of guilt or their aid to the State in coping with crime.... ." Accord State v. Poteet, 61 N.J. 493, 497 (1972).
*186 In State v. Forcella, 52 N.J. 263, 275 (1968), cert. dism. 397 U.S. 959, 90 S.Ct. 999, 25 L.Ed.2d 252 (1970), death penalty rev'd at 403 U.S. 948, 91 S.Ct. 2278, 29 L.Ed.2d 859 (1971), the court observed:
And wholly apart from such express agreements for leniency, it is common place for sentencing judge to give weight to a guilty plea, and correctly so, since a man who confesses is probably a better prospect for rehabilitation ... The concept is just and humane. We should not deny a justified leniency for the many, merely to be positive that no man is needlessly encouraged not to defend. [at 276]
See also, State v. Corbitt, 74 N.J. 379, 396 (1977), aff'd 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978).
The fact that Anderson and Arrington received light sentences does not establish an unjustifiable disparity. The leniency they received was predicated upon their willingness to plead and to cooperate with the State in the prosecution of Rainey and Hubbard. They testified against Hubbard at his trial. True, under N.J.S.A. 2C:44-1 c(1) whether a defendant has plead or not should not be considered when determining whether to impose a custodial or noncustodial sentence. This does not mean that the presence or absence of a plea cannot be considered in determining the length of a custodial or noncustodial sentence. The cooperation of these defendants with law enforcement is a mitigating factor under N.J.S.A. 2C:44-1 b(12) which the sentencing court must consider.
Rainey was convicted of second degree murder. The maximum sentence for that crime was 30 years. He received a maximum of 25 years. Since his conviction was for second degree murder, the jury concluded that his culpability was less serious than Hubbard's. Because they were not convicted of the same degree of murder, they were not exposed to the same penalty at sentencing.
Defendant was not punished because he failed to confess or plead non vult. There is no requirement that the sentencing option be the same for a defendant who pleaded guilty and one who elects to go to trial in the absence of the death penalty. State v. Corbitt, supra; Brady v. United States, 397 U.S. 742, *187 751, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970); State v. Hubbard, 123 N.J. Super. 345, 352 (App.Div. 1973), certif. den. 63 N.J. 325 (1973). Because a defendant makes a bad choice or poor assessment of the risks of going to trial and is ultimately sentenced to the mandatory life sentence upon conviction, the sentence imposed should not be characterized as an unjustifiable disparity.
A fair application of the foregoing principles leads to the inescapable conclusion that under the Title 2A scheme all defendants convicted after trial of first degree murder received a mandatory life sentence. Since all defendants were given the same choice as to whether to contest their guilt and face a certainty of life imprisonment if convicted or plead non vult, there was no violation of any constitutional rights, State v. Corbitt, supra. The sentencing judge imposed the life sentence mandated by the Legislature upon conviction of first degree murder. Under these circumstances I am unable to find the slightest hint of any unjustifiable disparity in the sentence of defendant. One of the few positive aspects of a mandatory sentencing scheme, is the elimination of unjustifiable disparity.
The majority has implied that persons convicted under the Title 2A scheme for first degree murder would serve a greater sentence than persons of equal culpability convicted under Title 2C. This conclusion is rejected by me for the reasons expressed herein. Additionally, a recent report on Title 2C sentencing was released by the Administrative Director of the Courts.[6] This report reveals "a substantially increased level of sentence severity as it relates to rates, places, and duration of incarceration." This report tends to suggest that disparity is working in reverse. That is, defendants are getting harsher sentences under Title 2C than under Title 2A for the same offenses.
*188 Thus, the view of the majority that resentencing defendant in the instant case would likely eliminate disparity is not supported by this study. Moreover, disparity in sentences under Title 2C for murder is likely to be quite substantial. This is so because the Legislature does not provide any guidelines for the imposition of minimum parole ineligibility under N.J.S.A. 2C:43-6 b and N.J.S.A. 2C:43-7 b. The parole ineligibility is the backbone of the sentence. Additionally, the elimination of the presumptive sentence of N.J.S.A. 2C:44-1 f in murder cases will likely increase disparity under Title 2C sentence for murder. Since the sentencing judge must consider the aggravating and mitigating factors of N.J.S.A. 2C:44-1 a and b, that discretion is not unlimited. It has been recognized in some of the legal periodicals that unstructured discretion vested in the sentencing judge is the chief cause for the lack of evenhandedness in sentencing. See Rodes, "Disparity and Discretion in Sentencing: A Proposal for Uniformity," 25 U.C.L.A.L.Rev. 323 (1977); Hennessey, "Disparity in Sentencing," 3 New England J. Prison L. 5 (1976); Raymar, "Criminal Dispositions for New Jersey: Pretrial Intervention, The Model Penal Code, and Just Deserts," 8 Seton Hall L.Rev. 1 (1976).

III. Conclusion
The challenge presented to this panel is to accomplish the result intended by the Legislature in the manner it has established. The danger of such a task lies in overextending the process of judicial analysis and entering the process of legislating. "It is worth repeating that the judiciary is not concerned with the good sense of a statute. Policy matters are the exclusive responsibility of the legislative branch of government." Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 229 (1960). The design of the range of penalties for a particular offense is a legislative, not a judicial function. State v. Hubbard, supra; State v. Bausch, 171 N.J. Super. 314 (App.Div. 1979); State v. Hampton, 61 N.J. 250, 273 (1972). I cannot by judicial construction do what the Legislature has expressly declined to do. The mandatory life sentence for murder is not greater than *189 the maximum sentence for murder under the Title 2C scheme. Additionally, defendant's sentence was not an unjustifiably disparate sentence.
Notwithstanding my full appreciation for the just goals sought by the majority, I respectfully dissent from its analysis of legislative intent and would deny this application for resentencing for first degree murder where defendant is serving a mandatory life sentence, for the reasons herein stated.
NOTES
[1] § 2C:44-3 of the Proposed New Jersey Penal Code, subsections a and b, were essentially the same as N.J.S.A. 2C:44-3 a and b. Subsection c of N.J.S.A. 2C:44-3 is substantially different from subsection c of the Proposed New Jersey Penal Code.
[2] N.J.S.A. 2C:11-3 b.
[3] N.J.S.A. 2C:11-3 b, and N.J.S.A. 2C:43-6 b. Presumptive sentence of N.J.S.A. 2C:44-1 f does not apply.
[4] N.J.S.A. 2C:43-7 a(1).
[5] See N.J.S.A. 30:4-123.51 j.
[6] The report, dated September 5, 1980, was a study of 1668 cases which were sentenced under Title 2C for crimes committed subsequent to September 1, 1979.