**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4619-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BASIM HENRY, a/k/a
HENRY BASIN, BASIM
A. HENRY, SALAAL
PACKER, EASIM PARKER,
BASIR WKITE, BASIM AMIN
HENRY, and BOZ,

    Defendant-Appellant.

_____

Argued March 10, 2020 – Decided April 21, 2020

Before Judges Yannotti, Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-09-2285.

Glenn D. Kassman, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Glenn D. Kassman, on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/

Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Tried by a jury, defendant Basim Henry appeals from his conviction and sentence. We affirm.

In September 2014, an Essex County grand jury returned Indictment Number 14-09-2285, charging Karif Ford, Kevin Roberts, Hanif Thompson, and defendant with second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2, 2C:15-2(a) (count one); first-degree carjacking, N.J.S.A. 2C:15-2(a)(2) (count two); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and, second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six). On the same day, an Essex County grand jury returned Indictment Number 14-09-2289, charging defendant with one count of second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b).

Prior to trial, all four defendants unsuccessfully moved to suppress evidence. Pursuant to N.J.R.E. 404(b), the State moved to admit evidence of defendants'

A-4619-16T3

conduct three days before the day of the crimes charged. Judge Michael L. Ravin granted the State's 404(b) motion.

In May 2017, a jury found defendant guilty of all charges in Indictment No. 14-09-2285. In a separate trial that followed before the same jury, defendant was found guilty of the certain persons offense charged in Indictment No. 14-09-2287. On June 26, 2017, Judge Ravin sentenced defendant to life imprisonment.[1]

On appeal, defendant raises the following arguments:

> POINT I
>
> THE TRIAL COURT'S REPEATED USE OF THE PHRASE 'AND/OR' DURING ITS JURY INSTRUCTION ON CONSPIRACY CREATED THE PRECISE AMBIGUITY DISAPPROVED OF BY THE SUPREME COURT IN STATE V. GONZALEZ[2] AND THEREBY DENIED DEFENDANT A FAIR TRIAL.
> (Not Raised Below)
>
> POINT II
>
> BECAUSE OF THE MISREPRESENTATIONS CONTAINED IN DETECTIVE MATHIS' AFFIDAVITS, THE COURT ABUSED ITS DISCRETION BY REFUSING TO CONDUCT A

---

[1] Less than four months following defendant's sentencing, Ford, Roberts, and Thompson all entered guilty pleas, after accepting plea offers from the State.

[2] 444 N.J. Super. 62, 130 (App. Div. 2016), certif. denied, 226 N.J. 209 (2016).

FRANKS[3] HEARING OR EVEN TO PERMIT ORAL ARGUMENT BY DEFENSE COUNSEL.
(Raised Below)

POINT III

THE COURT'S ADMISSION OF EVIDENCE SUGGESTED THAT DEFENDANT MAY HAVE TRIED TO STEAL A RANGE ROVER ON A PRIOR OCCASION DEPRIVED DEFENDANT OF A FAIR TRIAL.
(Partially Raised Below)

POINT IV

GIVEN DEFENDANT'S CULPABILITY RELATIVE TO THE CO-DEFENDANTS, THE IMPOSITION OF A SENTENCE OF LIFE PLUS TEN YEARS WAS EXCESSIVE.
(Not Raised Below)

Defendant filed a pro se supplemental brief, in which he argues:

POINT I

NUMEROUS CHARGE ERRORS DEPRIVED HENRY OF HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL.
(Not raised below)

A.    The jury instructions Erroneously Indicated that Henry Could be Found Guilty of All of the Offenses Committed by Thompson and Roberts but not Ford, if Henry was a Co-Conspirator "and/or" an Accomplice to Carjacking, and Murder Under the Theory of Vicarious Liability for Carjacking and Murder.

---

[3]  Franks v. Delaware, 438 U.S. 154 (1978).

4

B.   Evidence was insufficient to establish knowing and purposeful murder under N.J.[S.A.] 2C:11-3(a)(1) and (2), the trial court erred by not adequately instructing the jury on causation under N.J.[S.A.] 2C:2-3.

POINT II

NUMEROUS CONFRONTATION RIGHT VIOLATION[S] DEPRIVED HENRY OF HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL.
(Not raised below)

POINT III

THE PRE-TRIAL AND DURING THE TRIAL EXTENSIVE PUBLICITY AND DISSEMINATION OF PERTINENT DETAILS OF THE PROCEEDINGS THROUGH THE RELEASE OF THE COMPUTER DISK CONTAINING ALL IN-COURT WITNESSES' TESTIMONY AND COLLOQUY HAD A SUBSTANTIAL AND PREJUDICIAL EFFECT ON THE JURY DEPRIVING DEFENDANT OF HIS RIGHT TO A FAIR TRIAL. (Not raised below)

POINT IV

TO ENSURE THAT DEFENDANT RECEIVES FAIR AND UNBIASED TREATMENT AND TO AVOID THE APPEARANCE OF IMPROPRIETY, JUDGE RAVIN SHOULD HAVE RECUSED HIMSELF FROM PRESIDING OVER PROCEEDINGS AS WAS ADDRESSED IN THE PRE-TRIAL MOTION PURSUANT [TO] RULE 1:12-1(g) SUBMITTED BY DENNIS S. CLEARY, ESQ., ON JUNE 24, 2015, ON BEHALF OF DEFENDANT HENRY. (Raised pretrial)

<u>Point V</u>

CUMULATIVE EFFECT OF ALL TRIAL ERRORS
DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR
TRIAL. (Not raised below)

Having considered these arguments in light of the applicable law and facts, we perceive no basis to disturb defendant's conviction or sentence.

I

We discern the following facts from the record. In the late afternoon of December 15, 2013, Jaime and Dustin Friedland[4] drove their 2012 silver Range Rover to the The Mall at Short Hills (the mall) in Millburn and parked on the third-floor parking deck. Several hours later, defendant drove Thompson, Roberts and Ford in a 1996 green and beige two-tone GMC Suburban to the same parking deck.

Shortly after 9:00 p.m., surveillance footage from the mall captured the couple returning to their Range Rover. Dustin opened the car door for Jamie and then walked around to the back of the car. At this point, Thompson and Roberts approached Dustin; following a struggle, Thompson shot Dustin in the head, inflicting a fatal wound. After pointing a gun at Jaime's head and ordering her to get

---

[4] For clarity, and intending no disrespect, we refer to Jaime and Dustin Friedland by their first names.

A-4619-16T3

out of the car, Thompson and Roberts fled in the Range Rover, following defendant and Ford in the Suburban. Thompson, Roberts, Ford, and defendant then returned to Newark.

Within an hour of the shooting, Lieutenant Luigi Corino of the Essex County Prosecutor's Office (ECPO) began reviewing mall surveillance footage, resulting in the issuance of a "be on the lookout" alert for both the Range Rover and the Suburban. Police recovered the Range Rover the following morning in Newark.

Investigators later learned that on December 12, 2013, Sergeant Jamal Poyner of the Millburn Police Department ran the license plate number of a GMC Suburban driving suspiciously up and down the aisles of the mall parking lot. Lieutenant Corino requested surveillance from that date, which revealed the Suburban following a 2013 white Range Rover out of the parking lot.

The police identified G.S.[5] as the owner of the white Range Rover. According to E-Zpass records from December 12, 2013, the Suburban passed through a New Jersey Turnpike toll booth immediately behind the Range Rover. Lieutenant Corino interviewed G.S.'s daughter, who confirmed she drove the Range Rover to the mall on December 12, 2013.

---

[5] To protect their privacy, we use initials to refer to G.S. and her daughter.

On December 17, 2013, the court granted the State's application to install and monitor a mobile tracking device on the 1996 GMC Suburban registered to a person believed to be defendant's mother.[6] In support of the application, the State provided an affidavit from Detective Miranda Mathis that stated, "During the course of the investigation, a review of the surveillance footage from the [mall] captured a 1996 GMC Suburban, New Jersey license plate [] leaving the mall parking deck at a high rate of speed followed by the carjacked Range Rover Wagon." Mathis identified defendant's mother as the registered owner of the Suburban and stated the current location of the vehicle was at her address in South Orange.

On December 19, 2013, Ford met with ECPO detectives; after waiving his Miranda[7] rights, he agreed to submit to an interview, which the detectives recorded. Ford provided a detailed account of the carjacking and admitted his involvement. He informed the detectives he was staying at his mother's house, and that the clothes he wore during the carjacking, including a burgundy vest, remained at that location.

---

[6] The record indicates it was later determined the actual owner of the vehicle was the "significant other" of defendant's mother, who resided at the same address as defendant and his mother.

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

A-4619-16T3

In addition, Ford voluntarily turned over his cell phone to the detectives; a search of the phone revealed text messages from Thompson's phone, telling Ford that he should not give anyone the phone number, and that he should "stop running" his "mouth." On December 20, 2013, police obtained arrest warrants for Ford, Roberts, Thompson, and defendant.

On December 21, 2013, police executed a search warrant of the home of defendant's mother in South Orange. Later that day, police arrested defendant at a motel in Easton, Pennsylvania. After waiving his Miranda rights, defendant provided a statement, recounting the events leading up to the murder, the murder itself, and his efforts to evade detection.

During the statement, defendant confirmed that, days prior to the murder, he and Thompson arrived at the mall in the GMC Suburban, looking for a Jeep Cherokee to steal. He confirmed that he picked up Roberts, Thompson and Ford in the Suburban on the night of the murder and went to the mall to steal a Range Rover. He admitted he saw a gun in Thompson's coat before the four men went to the mall.

In September 2015, defendants all filed or joined in motions to suppress evidence of the cell phone records of all four defendants obtained with communication data warrants (CDWs). The cell phone records showed that all four defendants were together before the murder, that several of their phones pinged off of towers

servicing the mall just before the murder, that their phones were not in use at the time of the murder, that the four men were in contact with one another shortly after the murder, and that all four defendants returned to the Newark area after the murder.

In an affidavit submitted by the State in opposition to the motion, Detective Mathis explained:

> I believed then, as I do now, that every factual assertion in that paragraph was and is accurate. . . . With regard to the language in question . . . "[t]he vehicle is currently located at [a specific address in] South Orange, New Jersey." While the language could lead [one] to conclude that the license plate was observed on the video, and it was not, the fact is our investigation led us to believe the car in the video had that plate number, that the plate number matched the car, that the last address for the car was [the South Orange address], and most importantly that the car was currently at that address.

The judge denied defendants' motions to suppress evidence obtained with CDWs, rejecting their arguments as lacking in merit. The judge further concluded that defendants were not entitled to a Franks hearing "because they failed to provide an offer of proof, such as witness affidavits, to support" their claims that "the affidavits were deliberately false or contained falsities made with reckless disregard for the truth."

Judge Ravin further explained:

> A literal reading of the statement . . . in support of the CDWs, that the Suburban captured on the surveillance had

> a license plate number . . . does not imply that the license plate number was visible in the surveillance video; rather, it is consistent with the implication that the license plate number could have been discovered from other sources, which is the State's claim, and that the license plate number was included in the affidavits for descriptive purposes.

Judge Ravin reasoned probable cause existed for the CDWs "because the totality of the circumstances described in the affidavit . . . supported the belief that tracking the [1996 two toned-green and beige GMC Suburban] would provide evidence" of the murder. The judge further explained that the mistaken identification of defendant's mother as the owner of the vehicle, rather than defendant's mother's partner, "does not change the analysis."

On October 26, 2016, Judge Ravin granted the State's motion to admit defendant's statement at trial. On November 28, 2016, the judge granted the State's motion to prove defendant's prior bad acts – that defendant drove around the mall three days prior with a plan and motive to steal a specific type of vehicle – for the purpose of establishing motive and common scheme or plan, pursuant to N.J.R.E. 404(b).

The judge analyzed the admissibility of the prior bad acts under Cofield.[8] Addressing the first prong, the judge found the evidence relevant because it was

---

[8] State v. Cofield, 127 N.J. 328 (1992).

A-4619-16T3

probative of defendant's motive to steal a specific type of vehicle and part of an ongoing plan. Under the second prong, the judge found defendant's prior conduct similar in kind and reasonably close in time to the incident because it occurred three days prior to the event. Addressing the third prong, the judge found the evidence of defendant's prior conduct clear and convincing based on Millburn Police records, surveillance camera recordings from the mall, and E-ZPass records. Under the fourth prong, the judge found the probative value of defendant's prior conduct outweighed the prejudice to defendant.

Judge Ravin limited the evidence presented by the State to defendant leaving the mall and following a Range Rover on to the highway three days prior to the murder. The judge also limited the testimony of G.S.'s daughter to "where she drove on December 12."

In pertinent part, Judge Ravin provided the jury the following charge regarding conspiracy and vicarious liability, in relationship to the crimes of carjacking and murder:

> Now, we're going to talk about conspiracy and vicarious liability. Counts [Two] and [Four] of the indictment charge the defendant with crimes of carjacking and murder. The State does not allege that the defendant committed the crimes of carjacking and/or murder personally, but rather that he is legally accountable for those crimes even though they were committed by another. More specifically, the State alleges that the crimes of

carjacking and/or murder were committed by Hanif Thompson and Kevin Roberts and that the defendant is legally accountable for the crimes of carjacking and murder committed by Hanif Thompson and Kevin Roberts because the defendant and Hanif Thompson and Kevin Roberts allegedly conspired together to commit those crimes. It is, therefore, necessary that I instruct you as to both crimes of carjacking and murder and the law of conspiracy.

I have already instructed you as to the offenses of carjacking, murder and conspiracy in connection with instructions on Count [Two], Count [Four] and Count One].

. . . .

[D]uring this charge, when I make reference to the charges of carjacking and murder you are to consider each charge individually.

Judge Ravin charged the jury with the elements of conspiracy to commit carjacking and then charged the jury with the elements necessary for conspiracy to commit murder. Thereafter the judge explained, in pertinent part:

If you're satisfied beyond a reasonable doubt that the State has proven all these essential elements and that Hanif Thompson and Kevin Roberts committed the crimes of carjacking and/or murder then you must go on to determine the guilt or innocence of the defendant for those same crimes. However, if you're not satisfied beyond a reasonable doubt that Hanif Thompson and Kevin Roberts committed the crimes of carjacking and/or murder then your inquiry ends here and you must return a verdict of not guilty as to the defendant. Therefore, the following instructions on conspiracy are only for your use if you find

13

beyond a reasonable doubt that Hanif Thompson and Kevin Roberts committed the crimes of carjacking and/or murder.

If you're satisfied beyond a reasonable doubt that the State has proven all these essential elements and that Hanif Thompson and Kevin Roberts committed the crimes of carjacking and/or murder then you must go on to determine the guilt or innocence of the defendant for those same crimes.

. . . .

Thus, for the purposes of this case, to find the defendant engaged in a conspiracy with Hanif Thompson and Kevin Roberts you must be satisfied beyond a reasonable doubt of the following elements:

1. That defendant agreed with Hanif Thompson and Kevin Roberts to commit carjacking and/or murder, and;

2. That when defendant so agreed with Hanif Thompson and Kevin Roberts, the defendant's purpose, that is his conscious object, was to promote or to make it easier for Hanif Thompson and Kevin Roberts to commit the crimes of carjacking and/or murder.

In this case, after consideration of all the evidence, if you find beyond a reasonable doubt that Hanif Thompson and Kevin Roberts committed the crimes of carjacking and/or murder, and also that the defendant conspired with Hanif Thompson and Kevin Roberts to commit those crimes, then you must find the defendant [sic] guilty of the crimes of carjacking and/or murder. On the other hand, if you have a reasonable doubt that Hanif Thompson and Kevin Roberts committed the crimes of carjacking and/or murder, that the defendant conspired with Hanif

14

> Thompson and Kevin Roberts to commit either crimes, or
> both, then you must find the defendant not guilty.

Defense counsel did not object to any portion of the instructions the judge provided. The jury found defendant guilty of all charges in Indictment No.14-09-2285. A separate trial on Indictment No. 14-09-2287 followed, and the jury returned another guilty verdict.

On June 26, 2017, Judge Ravin held defendant's sentencing hearing. Defense counsel conceded no mitigating factors applied, and defendant showed no remorse for his crimes, either personally or through his attorney. After finding no mitigating factors, the judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense) and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). He gave significant weight to aggravating factor three because defendant had been arrested seven times as a juvenile, fourteen times as an adult, convicted of unlawful possession of an assault firearm, and convicted of bank robbery. Additionally, the judge noted that defendant was released from prison in October of 2012 and committed the subject crimes just over one year later. The judge gave significant weight to aggravating factor nine, emphasizing defendant's recent release from prison and his escalating criminal behavior, from weapons offenses to robbery to murder. After mergers, defendant received a life sentence for first-degree murder, lesser concurrent

15

sentences for first-degree carjacking and second-degree unlawful possession of a weapon, and a consecutive ten-year sentence on the certain persons conviction.

II

A. Jury Charge Challenge

Relying on Gonzalez, 444 N.J. Super. 62, defendant contends for the first time on appeal the judge erred by providing ambiguous and erroneous jury instructions. Specifically, defendant alleges the judge used the phrase "carjacking and/or murder" and therefore some jurors could have concluded defendant "was an accomplice or co-conspirator in the carjacking but not the murder, while others may have found that he was an accomplice or co-conspirator in the murder but not the carjacking."

When a defendant fails to object to a jury charge at trial, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error, in the context of a jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

When reviewing any claim of error relating to a jury charge, "[t]he charge must be read as a whole in determining whether there was any error[,]" State v. Torres, 183 N.J. 554, 564 (2005), and the effect of any error must be considered "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). However, a defendant's attorney's failure to object to jury instructions not only "gives rise to a presumption that he did not view [the charge] as prejudicial to his client's case[,]" State v. McGraw, 129 N.J. 68, 80 (1992), but is also "considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013).

In Gonzalez, defendant allegedly conspired with two co-defendants – Aponte and Zayas – to rob a drug dealer. 444 N.J. Super. at 66-67. Aponte and defendant pretended that they wanted to buy drugs from the dealer. Ibid. During the transaction, Zayas emerged from behind a dumpster, and robbed and shot the dealer. There was no dispute that the defendant was present at the crime scene. Ibid. The issue was whether the defendant shared the co-defendants' intent to commit the crimes or whether his participation was the product of duress. The State's case was essentially a credibility contest between Zayas, who claimed the crime was the defendant's and Aponte's idea, and defendant, who claimed that Aponte coerced him into participating.

A-4619-16T3

The panel criticized the use of the phrase "and/or." Id. at 71. It found error in the jury charge on conspiracy and accomplice liability because the charge referred to "robbery 'and/or' aggravated assault" when referring to the substantive crimes the co-defendants were alleged to have committed for which the defendant was to be considered accountable. Id. at 73-75. The panel explained the critical flaw in the charge as follows:

> [T]he nature of the indictment required that the jury decide whether defendant conspired in or was an accomplice in the commission of a robbery, or an aggravated assault, or both. By joining (or disjoining) those considerations with "and/or" the judge conveyed to the jury that it could find defendant guilty of either substantive offense — which is accurate — but left open the possibility that some jurors could have found defendant conspired in or was an accomplice in the robbery but not the assault, while other jurors could have found he conspired in or was an accomplice in the assault but not the robbery. In short, these instructions did not necessarily require that the jury unanimously conclude that defendant conspired to commit or was an accomplice in the same crime. Such a verdict cannot stand.
>
> The jury was also told that "to find the defendant guilty of committing the crimes of robbery and/or aggravated assault charges, the State must prove [among other things] that [the co-defendant] committed the crimes of robbery and/or aggravated assault." Assuming the "and/or" in this instruction was interpreted as being a disjunctive, it is entirely possible the jury could have convicted defendant of both robbery and aggravated assault even if it found [the co-defendant] committed only one of those offenses, i.e., the jury was authorized, if it interpreted "and/or" in this

18

instance as "or," to find defendant guilty of robbery because it was satisfied the State proved that [the co-defendant] committed an aggravated assault.

[Id. at 75-77 (citations omitted).]

In denying certification, the Supreme Court expressly limited the panel's holding "to the circumstances in which it was used in this case." Gonzalez, 226 N.J. at 209.

While the jury charge here is similar to Gonzalez, the context of the cases are different. Unlike Gonzalez, the State's case did not turn on the testimony of one co-conspirator. Rather, here, the record contains considerable evidence of defendant conspiring with his co-defendants. Specifically, the surveillance footage and defendant's own admissible statements of guilt placed him at the mall three days before the murder and at the murder scene in the Suburban. Therefore, the State's case against defendant is overwhelming. Walker, 203 N.J. at 90.

Judge Ravin here repeatedly told the jury to separately consider the crimes of murder and carjacking. Thereafter, the judge charged the jury on murder, carjacking and conspiracy separately, without using the disjunctive. In Gonzalez, the judge mistakenly combined the crimes of robbery and aggravated assault together when the judge stated the "State does not allege that the defendant committed the crimes of robbery and/or aggravated assault personally, but legally accountable for that crime even though it was committed by another." 444 N.J. Super. at 73 (emphasis

19

added). Thus, we find <u>Gonzalez</u> is distinguishable, and viewing the jury charge as a whole, the charge did not rise to the level of plain error. <u>R.</u> 2:10-2.

B. <u>Denial of Franks Hearing</u>

We next turn to whether the judge abused his discretion when denying defendant a <u>Franks</u> hearing.

Defendant argues Detective Mathis' affidavit in support of an application to install a GPS tracking devise on the Suburban incorrectly asserted that the license plate number of the Suburban was obtained from the mall's surveillance footage. Defendant further argues that, without the license plate number, the affidavit lacked probable cause. Defendant contests that police obtaining the information from other sources is immaterial because that source was not identified in the affidavit.

When reviewing a trial court's denial of a motion to suppress, we will "uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" <u>State v. Elders</u>, 192 N.J. 224, 243 (2007) (citation omitted). We will only disturb the trial court's decision "if [it is] so clearly mistaken 'that the interests of justice demand intervention and correction.'" <u>Ibid.</u> (quoting <u>State v. Johnson</u>, 42 N.J. 146, 161 (1964)). We must focus on "whether the motion to suppress was properly decided based on the

A-4619-16T3

evidence presented at that time." State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999).

Where, as here, a defendant challenges the veracity of a search warrant affidavit, a Franks hearing is required only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 155-56. The defendant "must allege [a] 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171).

To obtain a Franks hearing, a defendant's allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." State v. Broom-Smith, 406 N.J. Super. 228, 241 (App. Div. 2009) (quoting Franks, 438 U.S. at 171). The allegations "must be proved by a preponderance of the evidence." Howery, 80 N.J. at 568. A defendant must also demonstrate that absent the alleged false statements, the search warrant lacks sufficient facts to establish probable cause. Ibid. If a search warrant affidavit contains sufficient facts establishing probable cause even when the alleged false

statements are excised, a <u>Franks</u> hearing is not required. <u>Franks</u>, 438 U.S. at 171-72.

Here, Judge Ravin correctly denied defendant's request for a <u>Franks</u> hearing. Defendant failed to provide an affidavit or any other reliable statements constituting a substantial showing that Detective Mathis' affidavit contained deliberate falsehoods or statements made in reckless disregard for the truth. Defendant initially challenged the CDW, arguing there was no probable cause to issue the CDW for phone numbers for defendants and co-defendants because the license plate number of the Suburban was not visible in the surveillance footage from the mall. On appeal, defendant does not challenge the CDW but rather the warrant that permitted the police to place a GPS tracker on the Suburban.

"The limitations imposed by <u>Franks</u> are not insignificant." <u>Howery</u>, 80 N.J. at 567. A defendant's burden is substantial because "a <u>Franks</u> hearing is not directed at picking apart minor technical problems with a warrant application[,]" but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents[.]" <u>Broom-Smith</u>, 406 N.J. Super. at 240. Defendant's failure to present any evidence other than an undisputed fact – that the license plate number did not come from the surveillance video – resulted in a record devoid of evidence satisfying his burden for a <u>Franks</u> hearing. <u>See</u> <u>id.</u> at 240-41.

22

Defendant also contends the affidavit did not establish probable cause because absent the fact of the license plate number, there "was no legitimate basis by which to connect the Suburban to its registered owner or to the address where it was parked."

We agree with Judge Ravin's finding of probable cause and that the license plate number could have been discovered from other sources. The record supports those determinations. The judge additionally relied on defendant's mother owning the Suburban and the police corroborating the license plate number when it located the vehicle at Hallman's address, which gave additional support that tracking the vehicle would provide evidence of the murder.

## C. N.J.R.E. 404(b) Evidence

Defendant further argues, for the first time on appeal, that Judge Ravin erred by admitting evidence suggesting he may have attempted to steal a vehicle on a prior occasion.

We give "great deference" to a trial court's determination on the admissibility of "other bad conduct" evidence. State v. Goodman, 415 N.J. Super. 210, 228 (App. Div. 2010) (citing State v. Foglia, 415 N.J. Super. 106, 122 (App. Div. 2010)). This court applies an abuse of discretion standard; therefore, there must be a "clear error

of judgment" to overturn the trial court's determination. State v. Castagna, 400 N.J. Super. 164, 182-83 (App. Div. 2008).

N.J.R.E. 404(b) provides that evidence of other crimes or bad acts is generally not admissible, unless used for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute."

The concern in admitting evidence of other crimes or bad acts is "the jury may convict the defendant because he is a bad person in general." Cofield, 127 N.J. at 336 (internal quotation marks omitted). However, "other crimes evidence may be admissible if offered for any non-propensity purpose, including the need to provide necessary background information about the relationships among the players" involved. State v. Rose, 206 N.J. 141, 180-81 (2011) (emphasis, internal quotation marks, and citations omitted). The evidence is not required to prove or disprove a fact at issue but need only support a desired inference. State v. Swint, 328 N.J. Super. 236, 252-53 (App. Div. 2000).

In Cofield, our Supreme Court set forth a four-pronged test to govern the admission of such evidence:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Cofield, 127 N.J. at 338; see also State v. Carlucci, 217 N.J. 129, 140-41 (2014) (reaffirming the Cofield test).]

Generally, all four Cofield factors must support the admission of the evidence in question. State v. P.S., 202 N.J. 232, 255 (2010). However, our Supreme Court has clarified the second Cofield prong "need not receive universal application in [N.J.R.E.] 404(b) disputes." State v. Williams, 190 N.J. 114, 131 (2007).

The Cofield analysis presumes that other-crimes evidence is to be excluded, rather than admitted, as the burden falls on the moving party seeking to admit such evidence. State v. Reddish, 181 N.J. 553, 608-09 (2005). The risk of prejudice from such evidence only has to "outweigh" its probative value in order to compel its exclusion; i.e., the risk does not have to "substantially outweigh" the probative value, as is required under the general standard of N.J.R.E. 403 for excluding relevant evidence. Id. at 608. "An important factor in weighing the probative value of other-crime evidence is whether other, less inflammatory evidence can prove the same fact in issue." State v. Oliver, 133 N.J. 141, 151 (1993). If less inflammatory evidence

25

is as "equally probative" as the other-crimes evidence proffered, while being "less prejudicial," that makes the other-crime evidence inadmissible. Castagna, 400 N.J. Super. at 181.

We "generally admit a wider range of evidence when the motive or intent of the accused is material." State v. Covell, 157 N.J. 554, 565 (2010). "That includes evidentiary circumstances that 'tend to shed light' on a defendant's motive and intent or which 'tend fairly to explain his actions,' even though they may have occurred before the commission of the offense." Ibid. (quoting State v. Rogers, 19 N.J. 218, 228 (1955)). Accordingly, we "require a very strong showing of prejudice to justify exclusion" of evidence of motive or intent. Covell, 157 N.J. at 570.

Here, Judge Ravin determined the State could admit evidence that defendant and Thompson drove around the mall three days prior to the murder with a plan and motive to steal a specific type of vehicle. Before he deemed this evidence admissible, the judge carefully considered the fourth Cofield prong, and determined the probative value of this act was strong and not outweighed by prejudice to defendant.

Further, the record shows there was no less inflammatory evidence available to the State to inform the jury about defendant's plan to steal a vehicle. Accordingly, we see no reason to disturb the judge's decision to admit this evidence. Additionally,

even without this evidence, there is overwhelming proof of defendant's guilt, given the surveillance footage on the day of the murder and defendant's voluntary admissions of the crime itself.

If 404(b) evidence is found to be admissible, "the court must instruct the jury on the limited use of the evidence." Cofield, 127 N.J. at 340-41 (internal citation omitted). "[T]he court's instruction 'should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Id. at 341 (quoting Stevens, 115 N.J. at 304).

Here, Judge Ravin provided an appropriate limiting instruction, both after Sergeant Poyner testified and again during the final charge. Moreover, defense counsel drafted the charge and did not object to it. Thus, it is likely "the jury faithfully followed [the] instruction[s]" it received. State v. Miller, 205 N.J. 109, 126 (2011).

D. Excessive Sentence Claim

Lastly, defendant argues he received an excessive sentence, when his culpability is compared with that of his co-defendants.

We review sentencing determinations with a deferential standard, see State v. Fuentes, 217 N.J. 57, 70 (2014), and will disturb a trial court's sentence only in instances where the sentencing guidelines were not followed, the aggravating and mitigating factors found by the trial judge were unsupported by the evidence, or the judge's application of the sentencing guidelines rendered the sentence clearly unreasonable, State v. Roth, 95 N.J. 334, 364-65 (1984). Under that deferential standard, only when the facts and law show "such a clear error of judgment that it shocks the judicial conscience" should we modify a sentence on appeal. Id. at 363-64.

Our Supreme Court has "consistently stressed uniformity as one of the major sentencing goals in the administration of criminal justice." State v. Roach, 146 N.J. 208, 231 (1996). Unwarranted "[d]isparity [with the sentence of a co-defendant] may invalidate an otherwise sound and lawful sentence." Id. at 232 (citing, e.g., State v. Hubbard, 176 N.J. Super. 174, 175 (Resent. Panel 1980)). However, "'[a] sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter.'" Ibid. (quoting State v. Hicks, 54 N.J. 390, 391 (1969)). "The trial court must determine whether the co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria." Id. at 233.

Defendant relies on Roach, 146 N.J. at 216, where the Court considered disparate sentences imposed by different judges on co-defendants convicted of identical crimes. Roach was sentenced to two consecutive life terms with sixty years' parole ineligibility, while his co-defendant was sentenced to two consecutive life terms with thirty years' parole ineligibility. Ibid. The Court determined that although "there was nothing intrinsically wrong with [the defendant's] sentence," State v. Roach, 167 N.J. 565, 567 (2001), there was no "acceptable justification of [the] defendant's sentence in light of the sentence imposed on his co-defendant," Roach, 146 N.J. at 233.

Defendant's reliance on Roach is misplaced. Defendant and his co-defendants were not convicted of identical offenses with the same degrees of culpability. Roberts pled guilty to first-degree carjacking, pursuant to a plea agreement. Judge Ravin sentenced him to a twenty-year prison term, with an eighty-five percent period of parole ineligibility pursuant to NERA. The judge found mitigating factor twelve because Roberts agreed to testify against his co-defendants. Ford also pled guilty to second-degree carjacking, pursuant to a plea agreement. Judge Ravin sentenced him to a twenty-year prison term, with an eighty-five percent period of parole ineligibility pursuant to NERA. Thompson, the person who shot Dustin, pled guilty to first-degree felony murder and second-degree unlawful possession

of a weapon, also pursuant to a plea agreement. Judge Ravin sentenced him to a thirty-year prison term, with thirty years of parole ineligibility, in accordance with his plea agreement.

Defendant exercised his right to proceed to trial and the jury found him guilty of all charges under both indictments. Judge Ravin found aggravating factors three and six applied. The judge emphasized defendant's repeated criminal behavior. Although defendant's sentence differs from his co-defendant's, defendant's disparate sentencing argument is fundamentally flawed under Roach.

Judge Ravin addressed the possibility of disparate sentencing at defendant's sentencing, anticipating that the issue might arise in a case with four co-defendants. He explained,

> A defendant's sentence does not need to be identical to the sentences of his co-defendants. It is said that it just cannot be a deviation from what is normal or expected. In deciding whether a [c]ourt should sentence co-defendants similarly, the [c]ourt must determine whether the co-defendants are identical or substantial[ly] similar to the defendant regarding all relevant sentencing criteria.
>
> A [c]ourt cannot consider the fact that a defendant decided to go to trial, while his co-defendants accepted a plea agreement when making a sentencing determination for that defendant. But while due process would undoubtedly be denied if further punishment were inflicted on a defendant for choosing to exercise his right to trial, it would be grossly unfair

to the co-defendants if all had to be sentenced without regard to their candid acknowledgment of guilt.

We discern no sentencing error. As noted, defense counsel conceded no mitigating factors applied, and defendant showed no remorse for his crimes. Defendant's sentence was within the sentencing guidelines and does not shock the judicial conscience as unfair.

E. Defendant's Pro Se Supplemental Brief

In his pro se supplemental brief, defendant argues that Judge Ravin "should have recused himself from presiding over proceedings," in order to insure "fair and unbiased treatment and to avoid the appearance of impropriety." The asserted basis for the recusal motion was that Judge Ravin was the judge who issued the search warrants during the investigative stage of the case.

Motions for recusal "are entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." State v. McCabe, 201 N.J. 34, 45 (2010). "[T]he mere appearance of bias may require disqualification. However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." State v. Marshall, 148 N.J. 89, 279, (1997) (citation omitted); see R. 1.12-1(g); Code of Judicial Conduct, Canons 2, 3.17, Pressler & Verniero, Current N.J. Court Rules, App. to Pt. I (2020). "The proper standard to assess defendant's request

for recusal is set forth in DeNike v. Cupo, 196 N.J. 502, 517 (2008): 'Would a reasonable, fully informed person have doubts about the judge's impartiality?'" State v. Dalal, 221 N.J. 601, 606 (2015).

Defendant's recusal argument lacks merit. Even "[a]n adverse ruling in prior proceedings does not warrant disqualification." Marshall, 148 N.J. at 276; see Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) ("Bias cannot be inferred from adverse rulings against a party.").

To the extent not already addressed in this opinion, the remaining arguments raised in defendant's supplemental pro se brief lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4619-16T3